UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| NABIL SHALAN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, ET AL.,<br><br>　　　　Defendants. | Civil Action No. 05-10980-RWZ |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO REMAND**

On or about May 12, 2005, plaintiff Nabil Shalan filed a complaint with this Court pursuant to Section 336 (b) of 8 U.S.C. § 1447(b), seeking a hearing on his naturalization application. That statute provides that a district court has jurisdiction to hear suits to compel agency action on a naturalization application or to adjudicate an application "[i]f there is a failure to make a determination under § 1446 of this title before the end of the 120 day period after the date on which the examination is conducted under this section ...." 8 U.S.C. § 1447(b).

For the reasons explained below, this action should be dismissed for lack of subject matter jurisdiction because the "examination" of plaintiff has not yet been completed; thus, the 120 day period provided for in § 1447(b) has not yet been triggered. In the alternative, defendant respectfully requests that the Court remand this matter to the United States Citizenship and Immigration Services ("USCIS") to complete its adjudication of plaintiff's naturalization application.

**STATUTORY AND REGULATORY BACKGROUND**

A.  **Authority to Naturalize Aliens**

Until 1990, United States District Courts sat as naturalization courts and were vested with exclusive jurisdiction to review the qualifications of an applicant for naturalization and to naturalize aliens as citizens of the United States.  See 8 U.S.C. §§ 1101(a)(24), 1421(a) (repealed 1990); see also Shomberg v. United States, 348 U.S. 540 (1955).  Under this two-tiered system, the applicant submitted a preliminary naturalization application to the Immigration and Naturalization Service ("INS"), which conducted a preliminary investigation of the applicant and made a non-binding recommendation to the district court as to whether the application should be approved or denied.  See 8 U.S.C. §§ 1445(b), 1446(b), (d) (repealed 1990); 8 C.F.R. §§ 334.11, 335.11-.13 (1990).  The ultimate decision to approve or deny the naturalization application was vested solely with the federal court, which took jurisdiction based on a petition filed by the applicant and administered the oath of allegiance.  See 8 U.S.C. §§ 1421, 1445, 1447, 1448 (repealed 1990).

In 1990, Congress enacted the Immigration Act of 1990, Pub. L. No. 101-649, § 401, 104 Stat. 4978 ("IMMACT"), which overhauled the naturalization process in favor of a one-tier administrative procedure.  One of the purposes for this shift to an administrative naturalization application process from a judicial one was to reduce the backlogs in many federal courts and streamline the process.  See 135 Cong. Rec. H4539-02 (July 31, 1989)  ("[T]he current system is one which requires a two-step process, one within the Immigration and Naturalization Service, and second, in the U.S. district court, and this legislation is directed to change that process and to create a one-step option which will allow citizenship to be more expeditiously provided to those

who qualify") (statement of Rep. Morrison), 1989 WL 182156, *H4542; H. R. Rep. No. 101-187, at 8 (1989) (statement of Rep. Morrison); see also H.R. Rep. No. 102-287, at 4, reprinted in 1991 U.S.C.C.A.N. 1362, 1363.

Under § 401 of IMMACT, Congress transferred the power to naturalize from the district courts and vested the Attorney General -- now the Secretary of DHS[1] -- with "sole authority to naturalize persons as citizens of the United States." See 8 U.S.C. § 1421(a). Under the administrative naturalization process, USCIS is responsible for adjudicating naturalization applications, including rendering a preliminary investigation of the applicant, conducting an examination, and making a determination as to whether to grant or deny the application. See 8 U.S.C. §§ 1446(a), (b), (c). If USCIS initially denies a naturalization application, the applicant may seek administrative review of the denial by requesting a hearing before a supervisory immigration officer. 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(b).

While vesting the primary naturalization authority with the Secretary of DHS, however, Congress did not completely eliminate the district court's jurisdiction over the naturalization application process. For example, the district courts may still administer the citizenship oath of allegiance. See 8 U.S.C. § 1421(b)(1). The district courts also have jurisdiction to review de novo applications for naturalization denied as a result of the administrative review procedure under § 1447(a). See 8 U.S.C. § 1421(c). Finally, under 8 U.S.C. § 1447(b), the provision at issue here, the applicant may apply to the appropriate district court for a hearing on the

---

[1] The transfer of the former INS's naturalization functions to the newly-created DHS included the transfer of the authority to naturalize from the Attorney General to the Secretary of DHS. See Homeland Security Act of 2002, Pub. L. No.107-296, § 1512(d), 116 Stat. 2135, 2310.

naturalization application if the INS does not grant or deny the application within 120 days after the naturalization examination. In such case, the court "may either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter." 8 U.S.C. § 1447(b).

B.  **The Statutory Requirement to Conduct Background Investigations**

In connection with naturalization applications, Congress has directed that the government conduct a thorough background investigation of each applicant to confirm that the applicant is eligible for naturalization. See 8 U.S.C. § 1446(a). To this end, the former INS adopted regulations providing, *inter alia*, that:

> Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application ....

8 C.F.R. § 335.1 (2004). The need to conduct a background investigation of an applicant for naturalization is necessitated by the fact that, to be eligible for naturalization, an applicant must establish that he is a person of good moral character, see 8 U.S.C. § 1427(d), and an alien cannot establish good moral character if, *inter alia*, he or she has been convicted of certain criminal offenses, including crimes involving moral turpitude. See 8 U.S.C. § 1101(f).

Pursuant to this statutory requirement, USCIS conducts several forms of security and background checks when a lawful permanent resident alien applies for naturalization to ensure that the alien is eligible for naturalization and that he or she is not a risk to national security or public safety. See Declaration of Karen Haydon ("Haydon Decl.") ¶ 2. These security and background checks include: (a) a record check of the alien made against DHS' own immigration

systems; (b) a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records on the alien *(e.g.* arrests and convictions); and (c) a national security check, which is run against databases containing information that is not necessarily revealed by the FBI's fingerprint check.  Id. On occasions, law enforcement checks (including FBI fingerprint checks and national security checks) have revealed significant derogatory information regarding alien applicants for immigration benefits, including applicants seeking naturalization, which has resulted in the alien being found ineligible for naturalization or other benefits.  Id., ¶ 3.

In 1997, Congress enacted legislation that underscores the importance the Legislative Branch places on the favorable completion of a background investigation as a necessary prerequisite to an application for naturalization.  That legislation mandated that "none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997."  Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997), see 8 U.S.C. § 1446 Historical and Statutory Notes (Criminal Background Checks).

**STATEMENT OF FACTS**

Plaintiff is a native and citizen of Jordan and a legal permanent resident of the United States.  See  Complaint ¶ 2.  On May 4, 2001, plaintiff filed an application for naturalization.[2]

---

[2] During the past year, this office has been informed by the DHS that over 33,000 applications for naturalization have been filed with the Boston District Office for processing.  Presently, over 1,600 applications are being reviewed by the FBI concerning national security checks on those applicants.

Id., ¶8.  In connection with that application, plaintiff's national security checks were processed on June 30, 2004, but remain pending.  Haydon Decl., ¶ 6.  Plaintiff was interviewed by the INS in November, 2004.  See Complaint, ¶8.  USCIS procedures require that these national security checks be completed before plaintiff's naturalization application can be completed.  Hayden Decl., ¶ 6.  USCIS therefore is continuing its background national security investigation of plaintiff.  Id., ¶ 7.

## ARGUMENT

**I.    THIS COURT LACKS JURISDICTION OVER THE COMPLAINT BECAUSE THE STATUTORY "EXAMINATION" OF PLAINTIFF HAS NOT BEEN COMPLETED**

Section 1447(b) provides that, if there is a failure to make a determination on naturalization "before the end of the 120 day period after the date on which the examination is conducted," the applicant "may apply to the United States district court for the district in which the applicant resides for a hearing on the matter," and "[s]uch court has jurisdiction over the matter and may either determine the matter or remand, with appropriate instructions, to [USCIS] to determine the matter."  8 U.S.C. § 1447(b).  The question presented by this case, therefore, is whether the statutorily-required "examination" has been completed so as to trigger the commencement of the 120 period provided for in section 1447(b).  Plaintiff asserts that, in November 2004, he took and passed the naturalization application at the Boston INS office, triggering the 120-day statutory period.  Complaint ¶ 2.  As demonstrated below, that assertion is mistaken.

In Danilov v. Aguirre, 370 F. Supp.2d 441 (E.D. Va. 2005), the United States District Court for the Eastern District of Virginia considered this very question, and concluded that the

120 day period provided for in section 1447(b) does not begin to run until the agency receives the FBI background investigation of the alien. In particular, the court reasoned as follows:

> The answer to this question is found in the statute itself, as elucidated in the CIS implementing regulations. To begin with, § 1446(b) makes clear that an examination is not a single event, but instead is essentially a *process* the agency follows to gather information concerning the applicant. Thus, the statute provides that an "examination" may include the issuance of subpoenas to compel the attendance and testimony of witnesses and the production of relevant papers, books and documents and the taking of testimony concerning any matter touching or affecting the admissibility of any applicant for naturalization. 8 U.S.C. § 1446(b). Significantly, Congress, more recently, has added another, very important requirement for the examination process: Effective beginning in fiscal year 1998, Congress now requires completion and review of an FBI criminal background investigation of the applicant as part of the examination process. *See* Public Law 105- 119, Title I, Nov. 26, 1997, 111 Stat. 2448. To implement this additional requirement, the responsible agency adopted a regulation requiring that the FBI complete a criminal background investigation of an applicant *before* the examination may be completed. *See* 8 C.F.R. § 335.2. And, importantly, these regulations are entitled to *Chevron* deference as an authoritative interpretation of the statute unless, as is not true here, it appears from the statute or its legislative history that the agency's interpretation is not one that Congress would have sanctioned.
>
> From this, it follows, as the defendants correctly contend, that the interview of plaintiff that occurred in January 2004 did not end the statutorily-required "examination" and thus trigger the running of the 120 day period, since the interview occurred long before CIS received plaintiff's FBI background investigation. Rather, the January 2004 interview is merely a part of the overall examination process, as is a review of plaintiff's FBI background investigation, and the 120 day period does not begin to run until these and all other aspects of the examination process are completed. In this case, therefore, the 120 day period began to run, at the earliest, on March 24, 2005, the date on which CIS received the FBI background investigation of plaintiff.

Id. at 443-44 (internal footnotes omitted).

This conclusion applies with equal force in this case. Although, plaintiff's national security checks were processed on June 30, 2004, they remain pending, and USCIS procedures require (as Congress mandated) that these national security checks be completed before

plaintiff's naturalization application can be completed. Haydon Decl. ¶ 6. Consequently, the statutorily-required "examination" of plaintiff which would trigger the 120 period provided for in section 1447(b) will not commence until plaintiff's national security checks reach completion.

Moreover, as the district court noted in <u>Danilov</u>, neither the Administrative Procedure Act nor the mandamus statute, 28 U.S.C. § 1361, provide an alternate source of jurisdiction in this case, inasmuch as these additional jurisdictional sources are general grants of jurisdiction which may not be relied upon to expand the specific grant of jurisdiction set forth in section 1447(b). <u>See</u> 370 F. Supp.2d at 444-45. This Court therefore lacks jurisdiction under section 1447(b).[3]

## II. IN THE ALTERNATIVE, THIS COURT SHOULD REMAND THIS MATTER TO THE AGENCY

Even were this Court to determine that it has jurisdiction to consider plaintiff's claim, the statute affords the Court with discretion to "either determine the matter or remand, [or] with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b). For the following reasons, the government submits that this Court should exercise its discretion and remand this matter to USCIS, with any appropriate instructions.

---

[3] Even if mandamus was applicable, the 14-month delay from the time the FBI began processing plaintiff's national security checks is not unreasonable for purposes of such relief. <u>See</u>, e.g., <u>Alkenani v. Barrows</u>, 356 F.Supp.2d 652, 657 (N.D. Tex. 2005) (court denied exercising mandamus relief challenging USCIS's 15-month delay in adjudicating naturalization appeal where evidence showed that the immigration service was still awaiting the results of alien's national security check. Court noted that there were 600 pending name checks being processed by FBI and since FBI clearance is necessary for naturalization and delays in FBI processing is inevitable in light of heightened security concerns in the post-911 world, mandamus was not appropriate). Here, plaintiff was interviewed only 10 months ago and the FBI has been processing his background check along with 1,600 others. Plaintiff's claim that he is entitled to relief because 120 days has expired from date of his interview is not only belied by <u>Danilov</u>, but is equally unavailing under <u>Alkenani</u>.

The statutory naturalization scheme established by Congress since 1990 embodies several different, and sometimes competing, preferences. First, as explained *supra*, the 1990 amendments were primarily designed to relieve eligible applicants of undue delays in the adjudication of their naturalization applications. See also H.R. Rep. No. 101-187, at 8 (July 27, 1989) ("By vesting authority for naturalization with the Attorney General, the applicant will be relieved of onerous paperwork burdens, confusing divisions of responsibilities between the Courts and the Department of Justice, and unduly lengthy processing times to achieve their goal of acquiring U.S. citizenship."). In addition, when it overhauled the naturalization process in favor of a one-tier administrative procedure, Congress left intact § 1447(b), which allows an alien to request a hearing before a district court where a determination on the alien's naturalization application has not been made within 120 days after the examination has been conducted. See 8 U.S.C. § 1447(b).

At the same time, Congress left in place the requirement that the INS (and now, DHS) conduct and complete a thorough background investigation of each applicant to confirm that the applicant is eligible for naturalization. See 8 U.S.C. § 1446(a); see also 8 C..F.R. § 335.1 (2004). Congress reiterated the importance of this statutory requirement by enacting Pub. L. No. 105-119, Title I, 111 Stat. 2448 (Nov. 26, 1997), in which Congress made clear that *no* funds could be used to complete the adjudication of a naturalization application unless and until confirmation has been received by the FBI that a full criminal background check has been completed. See 8 U.S.C. § 1446 Historical and Statutory Notes (Criminal Background Checks).

In this case, because there has not been a final resolution regarding plaintiff's national security checks, USCIS is unable at this time to proceed to final adjudication of his

naturalization application at this time. See Haydon Decl. ¶¶ 6-7. The importance of allowing USCIS to complete this process cannot be overstated. As the Supreme Court has adumbrated, the government has a "strong and legitimate interest in ensuring that only qualified persons are granted citizenship," and "[t]he Government is entitled to know of any facts that may bear on an applicant's statutory eligibility for citizenship, so that it may pursue leads and make further investigation if doubts are raised." Berenyi v. INS, 385 U.S. 630, 637, 638 (1967). Indeed, on occasions, law enforcement checks have revealed significant derogatory information regarding alien applicants, including information that has sometimes resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States. Haydon Decl. ¶ 3. This is not to say, and we wish to emphasize that we are ***not*** suggesting, directly or indirectly, that any of these situations is necessarily applicable to plaintiff. The aforementioned information merely emphasizes the critical importance that the background checks play in adjudicating an application for naturalization, and why it is necessary for those checks to be favorably completed before an application can by finally adjudicated.

Under these circumstances, this Court should exercise its discretion and, consistent with § 1447(b), remand this matter to USCIS to allow it to complete its investigation of plaintiff. This is not a case in which USCIS has unduly delayed adjudication of plaintiff's application; rather, it is a case in which the agency is following the clear directives of Congress that all background investigations of an applicant for naturalization be completed prior to final adjudication of that application. Allowing USCIS to complete its investigation will afford the Executive Branch the opportunity to use its expertise to investigate fully any concerns that may have arisen about Plaintiff's background. This Court is not an investigative body, and we

respectfully submit that it is neither in the interests of the parties nor this Court to circumscribe USCIS's investigation and prematurely adjudicate plaintiff's application prior to the completion of all necessary background checks.

Moreover, deferring to the administrative process and allowing USCIS to complete its investigation will cause no prejudice to plaintiff, and is consistent with Congressional intent. By providing for administrative decisions, administrative appeals, and a limited role for the courts, Congress evidenced its strong preference that naturalization applicants exhaust their administrative remedies before seeking judicial review of their applications. See 8 U.S.C. §§ 1421(c) & (d), 1447(a). Here, if at the conclusion of its investigation, USCIS grants Plaintiff's application, there will be no need for this Court's involvement. If the application is denied, plaintiff may seek administrative review of that denial. See 8 U.S.C. § 1447(a). That review will provide him with a hearing where he will have opportunity to subpoena witnesses, submit documentary evidence, and cross examine any witnesses called on behalf of the government. See 8 U.S.C. § 1447(d). And, if the denial of his application is affirmed, plaintiff has a statutory right to seek review of that denial in this Court. See 8 U.S.C. § 1421(c).

Plaintiff's desire for an expeditious resolution of his application is always subject to Congress' overriding interest in ensuring that aliens who seek naturalization meet all the necessary qualifications, which includes a thorough background investigation. Where, as here, there has not been a final resolution regarding an applicant's background checks, prudence should trump dispatch, and this Court, in the exercise of its discretion under § 1447(b), should allow the administrative process to be completed and remand this matter to USCIS.

## CONCLUSION

For the foregoing reasons, this case should be dismissed for lack of subject matter jurisdiction or, in the alternative, remanded to USCIS.

                                            Respectfully submitted,

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

By: /s/ Michael Sady
      Michael Sady
      Assistant United States Attorney
      John Joseph Moakley U.S. Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA  02210
      617-748-3362

Dated: 10/3/05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NABIL SHALAN

    Plaintiff

v.                                     Civil Action No: 05-10980 RWZ

MICHAEL CHERTOFF et al

Defendant

## DECLARATION OF KAREN HAYDON

I, Karen Haydon, do hereby declare and say:

1. I am the Assistant District Director of the Boston, MA office for the United States Citizenship and Immigration Services ("USCIS") in the Department of Homeland Security ("DHS"). I assist the Director overseeing the adjudication of applications for benefits including applications for naturalization. I make this declaration based upon personal knowledge and information made known to me in the course of my professional duties.

2. When a lawful permanent resident alien applies to USCIS for naturalization, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for naturalization and that he or she is not a risk to national security or public safety. These background checks currently include: (a) a record check of the alien made against DHS' own immigration systems; (b) a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records of the alien (e.g. arrests and convictions) and (c) a national security check, which is run against databases containing information that is not necessarily revealed by the FBI's fingerprint check.

3. On occasions, law enforcement checks (including FBI fingerprint checks and national security checks) have revealed significant derogatory information regarding alien applicants for immigration benefits, including applicants seeking naturalization, which has resulted in the alien being found ineligible for naturalization or other benefits and USCIS' denial of the application. This information has also sometimes resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final EOIR order. In many instances, the disqualifying information on the alien has been discovered as the result of an FBI fingerprint check and/or a national security check..

4. I have reviewed the administrative file relating to Nabil Shalan and am thus familiar with the facts and circumstances of his case.

6. Nabil Shalan's national security checks which were processed on June 30, 2004 and have not been completed and are still pending. USCIS procedures require that said national security checks must be completed before subject's naturalization application can be adjudicated/completed.

7. Based upon above, USCIS is continuing its background national security investigation of Nabil Shalan.

I declare under penalty of perjury that, based upon reasonable inquiry and my knowledge, information and belief, the foregoing is true and correct.

MA.

Executed on the 21st day of September, 2005 at Boston,

Karen Haydon

Assistant District Director
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
Boston, MA