THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NABIL SHALAN,<br>　　　　Plaintiff<br><br>V.<br><br>MICHAEL CHERTOFF, as Secretary of the<br>Department Homeland Security; EDUARDO<br>AGUIRRE, as Director of the U.S. Citizenship &<br>Immigration Services; DENIS C. RIORDAN,<br>District Director of the U.S. Citizenship &<br>Immigration Services for Boston, Massachusetts<br>　　　　Defendants | )<br>)<br>)<br>)<br>)  CIVIL ACTION NO.05-10980-RWZ<br>)<br>)<br>)  PLAINTIFF'S RESPONSE TO<br>)  DEFENDANTS' MOTION<br>)  TO DISMISS OR REMAND<br>)<br>)<br>) |

## STATEMENT OF FACTS

Plaintiff is a lawful permanent resident alien in the United States. Complaint, ¶ 2. He is a citizen of Jordan. Complaint, ¶ 2. On May 4, 2001, he applied to become an United States citizen. Complaint, ¶ 8. An employee of Defendant Denis C. Riordan, District Director of the United States Citizenship and Immigration Services for Boston, Massachusetts conducted the naturalization examination of Plaintiff on November 3, 2004. Complaint, ¶ 8. Defendants have yet to determine Plaintiff's application for United States citizenship. Complaint, ¶ 10.

On May 12, 2005, Plaintiff brought this action against the Defendants under the provisions of 8 U.S.C. § 1447(b) which allow the District Court to hear and determine an application for naturalization when the Service has failed to make its determination within the '120 day period after the date on which the examination is conducted.'

On October 3, 2005, the Government responded to Plaintiff's complaint with a motion to dismiss for want of subject matter jurisdiction, or in the alternative to remand the case to the Service for further proceedings. Doc. 8

Defendants claim USCIS runs background checks on applicants for naturalization consisting of the following:

> "(a) a record check of the alien made against DHS' own immigration systems; (b) a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records of the alien (e.g. arrests and convictions) and (c) a national security check, which is run against databases containing the information that is not necessarily revealed by the FBI's fingerprint check." Affidavit of Karen Haydon, Assistant District Director, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, Boston, Massachusetts, Doc. 9, Ex. 1. ¶ 2. (hereinafter, Haydon Aff.)

Defendants claim that they initiated national security background checks for Plaintiff on June 30, 2004 and that they have not completed these checks. Haydon Aff. ¶ 6. Defendants then claim that Plaintiff's application for naturalization may not be completed/adjudicated until the national security background checks are complete. Haydon Aff. ¶ 6.

## ARGUMENT

**I. AS A MATTER OF LAW, THE 120 DAY PERIOD FOR DETERMINATION OF PLAINTIFF'S APPLICATION FOR NATURALIZATION COMMENCED NOVEMBER 3, 2004, THE DATE USCIS CONDUCTED ITS EXAMINATION OF PLAINTIFF. WHEN DEFENDANTS FAILED TO MAKE ANY DETERMINATION ON THE APPLICATION WITHIN 120 DAYS THEREAFTER, PLAINTIFF BECAME ELIGIBLE TO APPLY TO THIS COURT FOR A HEARING ON THE APPLICATION AND THIS COURT HAS JURISDICTION TO HEAR AND DETERMINE THE SAME.**

The Government asserts that an examination is not completed so as to trigger the 120 rule until national security checks are completed (Def. Mem., p. 6) Since, according to the Defendants, the national security checks are not completed, then the examination itself has not

been conducted within the meaning of 8 U.S.C. 1447(b) and the 120 period has yet to commence. Thus, according to Defendants, this Court lacks subject matter jurisdiction over Plaintiff's action.

8 U.S.C. 1447(b) provides as follows:

"If there is a failure to make a determination under section 335 [8 U.S.C. 1446] before the end of the 120 day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

8 U.S.C.1447(b) starts the accrual of the 120 period 'after the date on which the examination is conducted". There is no suggestion or intimation in this language that the accrual period commences only when USCIS has completed its investigation[1]. 8 C.F.R. 335.2 details the conduct of the examination. It does not include the acquisition of national security checks or background information as part of the examination. In fact, the regulation distinguishes the

---

[1]It should be noted that Congress has distinguished the naturalization investigation from the naturalization examination. 8 U.S.C. § 1446(a) directs USCIS to 'conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization." while 8 U.S.C. § 1446(b) provides for the conduct of the examination. It should also be noted that the Department of Homeland Security by regulation distinguishes the investigation from the examination. 8 C.F.R. 335.1 provides in part: "Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least five years immediately preceding the filing of the application." 8 C.F.R. 335.2 describes examinations.

examination from at least one form of investigation as it specifically requires the FBI investigation to be completed fully before the Service conducts its initial examination:

> "The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. 335.2(b)

Virtually all of the time lines established by regulation for critical events in the naturalization process focus on the date the applicant appears for his initial examination. "A decision to grant or deny the application shall be made at the time of the initial examination or within 120 days after the date of the initial examination of the application for naturalization under § 335.2."  8 C.F.R. 335.3(a)  "Rather than make a determination on the application, the Service officer may continue the initial examination on an application for one reexamination, to afford the applicant an opportunity to overcome deficiencies...However, the reexamination on the continued case shall be scheduled within the 120-day period after the initial examination, except as otherwise provided under § 312.5(b) of this Chapter."  8 C.F.R. 335.3(b)  Section 312.5(b) referenced in the foregoing provides in pertinent part: "Before an applicant may request a postponement of the second examination to a date that is more than 90 days after the initial examination, the applicant must agree in writing to waive the requirement under section 336 of the Act that the Service must render a determination on the application within 120 days from the initial interview, and instead to permit the Service to render a decision within 120 days from the second interview."  8 C.F.R. 312.5(b)  "After completing all examination procedures contained in part 335 of this chapter and determining to deny an application for naturalization, the Service

shall serve a written notice of denial upon an applicant for naturalization no later than 120 days after the date of the applicant's first examination on the application." 8 C.F.R. 336.1(a)[2] These regulations make extraordinarily clear that the Department of Homeland Security (and its INS predecessor, the United States Department of Justice) has long construed the reference to the 'date on which the examination is conducted" at 8 U.S.C. 1447(b) as the date USCIS conducts the initial examination of the naturalization applicant.

This construction is consistent with the legislative history of 8 U.S.C. 1447(b).  8 U.S.C. § 1447(b) was enacted as § 407(d)(14) of the Immigration Act of 1990. Pub. L. 101-649, 104 Stat. 4978 (Nov. 29, 1990).  Section 407(d)(14) came verbatim from H.R. 1630, 101st Cong., 1st Session, 1989.  About the provision, Congressman H.R. Smith of Texas stated:

> "Concerns were raised at the full Judiciary Committee level on a provision added to this year's bill.  H.R. 1630 provided for a de novo review in district court after 90 days. Subsequent to the full committee markups, these concerns were worked out among Judiciary Members.  The bill now provides that a naturalization application may be submitted to the court if the Immigration and Naturalization Service has not acted upon the application after 120 days.  This provision applies only at the interview stage, after the application has already been reviewed by the INS."  135 Cong. Rec. H4539-02

---

[2] See also 8 C.F.R. § 310.2 which requires the applicant to prove residency 'at the time of examination on the application' and 8 C.F.R. § 310.3 which allows the applicant to elect 'at the examination on the application' to take the oath administratively or before a Court.  These sections clearly speak to the applicant's appearance before the Service on the application as the examination.  Based on its examination of the regulatory scheme for administrative naturalization, Castracani v. Chertoff, 377 F. Supp. 2d 71 (D.C.Col., 2005) notes that naturalization interview is the examination that starts the 120 day determination period running.

The Government cites <u>Danilov v. Aguirre</u>, 370 F. Supp. 2d 441 (E.D. Va., 2005) as authority for its assertion that the 120 day period is not triggered until all background investigation is completed. In <u>Danilov</u>, the Court held that the examination essentially was a process the agency followed to gather information about the applicant for naturalization and that the naturalization interview by itself would not initiate the 120 day period. Plaintiff submits that <u>Danilov</u> was incorrectly decided. As noted in <u>El-Daour v. Chertoff</u>, 2005 U.S.Dist. LEXIS 18325 (W.D. Pa., August 26, 2005), Serguei Danilov was a pro se plaintiff who failed to respond to the defendants' motion to dismiss. Thus, the <u>Danilov</u> court effected its decision, essentially by default, without benefit of any briefing by the naturalization applicant and without oral argument.

In <u>Danilov</u>, the Court focused on 1997 appropriation legislation (P. L.105-119, Title I, Nov. 26, 1997, 111 Stat. 2448) which provided that that no funds made available to the Immigration and Naturalization Service could be used to 'complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed–". The Court determined that the FBI report necessarily was part of the examination process; accordingly, if the FBI report came in after the naturalization interview, the triggering event for the 120 days was the receipt of the FBI report rather than the naturalization interview.

Plaintiff submits that the <u>Danilov</u> court misreads the Defendants' own regulations in coming to this conclusion. The Court writes: "To implement this additional requirement, the responsible agency adopted a regulation requiring that the FBI complete a criminal background

6

investigation of an applicant *before* the examination may be completed.  See 8 C.F.R. § 335.2. And, importantly, these regulations are entitled to *Chevron* deference as an authoritative interpretation of the statute unless, as is not true here, it appears from the statute or its legislative history that the agency's interpretation is not one that Congress would have sanctioned." (Italics are the Court's)  Id, at 444

8 C.F.R. § 335.2 does not say what the Danilov court claims.  It does not say that the FBI must complete the criminal background examination before the examination may be completed. Rather, as quoted at p. 4, infra, it states that the Service is not to notify the naturalization applicant of the naturalization interview until the Service has received the definitive criminal background report from the FBI.  Obviously, the FBI report is a prelude to the examination and adjudication.  It is not the examination nor is its receipt the 'date on which the examination is conducted'.[3]

This Court clearly has subject matter jurisdiction of this case.   USCIS conducted its naturalization examination of Plaintiff on November 3, 2004.  More than 120 days have passed since that examination without a determination.  Consequently, pursuant to 8 U.S.C. 1447(b), Plaintiff could apply to this Court for a hearing on the matter and this Court has subject matter jurisdiction.  See El-Daour v. Chertoff, supra.

**II.  A DETERMINATION, FOLLOWING A HEARING, THAT PLAINTIFF'S APPLICATION FOR NATURALIZATION SHOULD BE GRANTED AND THE OATH**

---

[3]Plaintiff assumes that receipt of the FBI report is not involved in Plaintiff's own case. If USCIS conducted its initial examination of Plaintiff on November 3, 2004 without first receiving the FBI report, it acted contrary to its own regulations. Moreover, Affiant Haydon states that USCIS is conducting a national security background investigation and has been doing so since June 30, 2004; she specifically distinguishes an FBI report from the national security background check; she does not state that the Service is awaiting the results of the FBI report.

**OF CITIZENSHIP BE TAKEN, IS THE APPROPRIATE RELIEF IN THIS CASE; REMAND IS NOT.**

With respect to its alternative motion to remand, the Government notes that background investigations can yield information that bears on an applicant's qualifications for naturalization. Accordingly, prudence requires completion of all background checks. The Government asserts that the Court is not an investigative body and that the Court should not circumscribe the USCIS process by prematurely adjudicating Plaintiff's application for naturalization. Rather, it should remand the case to USCIS for completion of the investigation. (Def. Memo, pp. 8- 10)

The Government writes that this is 'not a case in which USCIS has unduly delayed adjudication of plaintiff's application." (Def. Memo. p. 10)

Plaintiff filed his application for naturalization four and a half years ago. He has yet to have a decision. Four and a half years is unreasonable and represents an undue delay in adjudication.[4] To remand Plaintiff's case to the organization that failed to complete its processing in four and a half years would be a cruel result.

The Government writes that "deferring to the administrative process and allowing USCIS to complete its investigation will cause no prejudice to plaintiff"". (Def. Memo. p. 11)   Should

---

[4]In Alkenani v. Barrows, 356 F. Supp. 2d 652, 657, n6 (N.D. Tex. 2005), the Court suggests that a delay of two years may be unreasonable.  8 U.S.C. 1447(b) is the only naturalization statute securing any rights to an applicant aggrieved by a delay. "If the CIS fails to make a final determination on a naturalization application within 120 days after examining the applicant, the applicant can sue in federal district court....[A]s a result of the 1990 Act, there is no recourse to the courts in the event of delays between filing an application for naturalization (or scheduling an appointment to file) and the actual examination on the application or between the approval of an application and the scheduling of the applicant's swearing in ceremony." 7 Immigration Law and Procedure § 96.07(3)(a), p. 96-27, Gordon, Mailman, and Yale-Loeder, LexisNexis, 2005.  Thus, Defendants' failure to determine Plaintiff's application within  120 days of his naturalization examination on November 3, 2004 created for Plaintiff the first opportunity under the naturalization laws of bringing to a head the delay that had then gone on for three and a half years.

the Service deny the application, Plaintiff has recourse to an administrative hearing and, if necessary, to Court review. (Def. Memo. p. 11)  There are absolutely no statutory or regulation time lines for the Service to act on an administrative appeal. ["The Immigration Act of 1990 provides no remedy if the CIS fails to schedule an administrative hearing requested by an applicant on the denial of his or her application. Nor is there a remedy for CIS's failure to render a decision in an administrative appeal of a denial." 7 Immigration Law and Procedure § 96.07(3)(a), p. 96-27, Gordon, Mailman, and Yale-Loeder, LexisNexis, 2005.]  Accordingly, the administrative appeal itself could languish as long as has the current application for naturalization.

Prejudice is inherent in a failure to decide an application for United States citizenship in a reasonable time.    The most precious of rights—enfranchisement–-turns on U.S. citizenship. So too, the ability for close family members, such as spouses, parents and children, to immigrate immediately to the United States, rather than wait ten years or more, springs from the U.S. citizenship of the sponsoring applicant. See 8 U.S.C. § 1151 (b)(2)   For a lawful permanent resident alien from a closely watched country such as Jordan, U.S. citizenship relieves  the ever-present fear of deportation following an outburst of official xenophobia.[5]

8 U.S.C. § 1447(b) vests this Court with exclusive jurisdiction over the Plaintiff's application for naturalization. Castracani v. Chertoff, supra, at 72., United States v. Hovsepian,

---

[5] Effective  September 11, 2002, the Attorney General issued a rule to 'protect national security' that subjected persons from selected countries to special registration requirements.  67 Fed. Reg. 52,584 (August 12, 2002)  On January 16, 2003, the Attorney General directed men in the United States who were non-immigrants, who were between ages 16 and 45 and who were from Jordan to report to the Department of Homeland Security for special registration.  68 Fed. Reg. 2363 (Jan. 16, 2003)  Although Plaintiff did not fall in that class as he was in the United States as an immigrant, the call-in of other male Jordanians in the same age group raises fears and alarums that only U.S. citizenship can dispell.

359 F. 3d 1144, 1162 (9th Cir., 2004).  Once Plaintiff invoked this Court's jurisdiction under 8 U.S.C. § 1447(b), Defendants no longer had jurisdiction to adjudicate the application.  Thus, responsibility for determining whether to act expeditiously on Plaintiff's longstanding application for naturalization now lies exclusively with this Court.   This responsibility is best satisfied  by hearing and determining expeditiously Plaintiff's application.  If, by the time of the hearing, the Government has found some reason to question Plaintiff's qualifications, it can then do so.  Like all other litigants, it will have had its day in Court. [6]

Defendants have not provided adequate facts to support a remand.   Neither Plaintiff nor this Court can tell from the Affidavit of Karen Haydon exactly what background checks are underway, by whom such background checks are being performed, what such background checks are expected to reveal, and the probable dates of the completion of such background checks.  If the background checks are being performed by employees of Defendants, then Defendants should be able to obtain the results expeditiously and have them available at the hearing which the Court conducts on Plaintiff's complaint and application for naturalization.  If the background checks are being performed by independent agencies or actors,  Defendants have failed to show that they cannot obtain information from these reporters quickly nor have they shown that the information itself is indispensable to a determination of  Plaintiff's application for naturalization.

---

[6]The Court in El-Daour v Chertoff, supra, chose to remand, rather than make the naturalization determination El-Daour sought.  It asserted that it was ill-equipped to conduct the missing criminal background investigation.  The Court wrote that it did not have the resources at its disposal "to determine whether El-Daour presents a risk to national security of public safety." Id, at 14.  There is nothing at 8 U.S.C. 1447(b) that suggests the Court itself needs to conduct an independent investigation of the risks to national security or public safety from a particular applicant for naturalization.  Rather, following a hearing, it can determine the matter or remand. Plaintiff submits that the Defendants would use the hearing to raise whatever objections they have acquired, through their own investigations, to the naturalization of the Plaintiff.

Given the time delays in the this case and the failure of the Defendants to describe in detail and with particularity the background investigation they claim is not completed, a remand is unjustified. Plaintiff submits that this Court should schedule a hearing on the merits of his application for naturalization and then determine it as allowed by law.

## **CONCLUSION**

Plaintiff appeared for his examination on November 3, 2004. More than 120 days have passed and Defendants still have not determined Plaintiff's naturalization application. Plaintiff has properly invoked this Court's jurisdiction to hear and determine Plaintiff's application. Defendant's Motion to Dismiss for want of subject matter jurisdiction should be denied.

Moreover, for all of the reasons discussed above, a remand of this case to Defendants for adjudication would be inappropriate. Four and a half years to wait for a decision is too long. That delay should not be compounded by returning the case to the very organization that has been so unresponsive for so long to the Plaintiff's application.

Dated this 9th day of October, 2005.

Nabil Shalan, Plaintiff,

/s/ Vard R. Johnson
Vard R. Johnson, BBO # 660137
Suite 210, 18 Tremont Sreet
Boston, Massachusetts 02108
    1-617-557-1711
    1-617-557-4711
vardinboston@verizon.net
    Plaintiff's Attorney


Given the time delays in the this case and the failure of the Defendants to describe in detail and with particularity the background investigation they claim is not completed, a remand is unjustified. Plaintiff submits that this Court should schedule a hearing on the merits of his application for naturalization and then determine it as allowed by law.

## **CONCLUSION**

Plaintiff appeared for his examination on November 3, 2004. More than 120 days have passed and Defendants still have not determined Plaintiff's naturalization application. Plaintiff has properly invoked this Court's jurisdiction to hear and determine Plaintiff's application. Defendant's Motion to Dismiss for want of subject matter jurisdiction should be denied.

Moreover, for all of the reasons discussed above, a remand of this case to Defendants for adjudication would be inappropriate. Four and a half years to wait for a decision is too long. That delay should not be compounded by returning the case to the very organization that has been so unresponsive for so long to the Plaintiff's application.

Dated this 9th day of October, 2005.

Nabil Shalan, Plaintiff,

/s/ Vard R. Johnson
Vard R. Johnson, BBO # 660137
Suite 210, 18 Tremont Sreet
Boston, Massachusetts 02108
    1-617-557-1711
    1-617-557-4711
vardinboston@verizon.net
    Plaintiff's Attorney

**CERTIFICATE OF SERVICE**

      I, Vard R. Johnson, certify that I served the foregoing Response to the Defendants' Motion to Dismiss or Remand upon Mr. Michael Sady, Assistant United State Attorney, John Joseph Moakley U.S. Courthouse, `1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210 by electronic filing, effected October 9, 2005.

                                                  /s/ Vard R. Johnson
                                                  Vard R. Johnson