THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NABIL SHALAN,<br>          Plaintiff | ) | |
| | ) | |
| | ) | |
| V. | ) | |
| | ) | CIVIL ACTION NO.05-10980-RWZ |
| MICHAEL CHERTOFF, as Secretary of the | ) | |
| Department Homeland Security; EDUARDO | ) | |
| AGUIRRE, as Director of the U.S. Citizenship & | ) | PLAINTIFF'S RESPONSE TO |
| Immigration Services; DENIS C. RIORDAN, | ) | DEFENDANTS' MOTION |
| District Director of the U.S. Citizenship & | ) | FOR AN IN CAMERA, EX |
| Immigration Services for Boston, Massachusetts | ) | PARTY PROCEEDING AND |
| Defendants | ) | FOR A REMAND |

**        Defendants motion for an ex parte, in camera proceeding to review classified material should be denied as Defendants have not established compelling national security concerns to warrant the same**.

Defendants ask the Court to allow them to file materials in camera, ex parte that they claim have a 'bearing on petitioner's pending application for naturalization." Doc. 16. While Defendants claim the material to be classified, they also are conducting a full file review of information they received from the FBI to ensure that the material in question is classified.[1] Doc. 16..

Defendants acknowledged at the conclusion of the January 26 hearing that the sole issue they intended to contest was whether Plaintiff had established himself to be a person of good moral character during the requisite time period. If Defendants want to show the Court secret evidence that they claim has a bearing on Plaintiff's pending application for

---

[1]Plaintiff assumes that Defendants' use of the term "classified" refers exclusively to national security information described at Executive Order 12356, issued April 2, 1982.

naturalization, they must believe this evidence goes to Plaintiff's lack of good moral character as that is the only issue that remains in dispute. Under those circumstances, Defendants want the Court to consider in camera and ex parte material that goes to the merits of Plaintiff's case.

Judge Lipez in his concurring opinion in Bl(a)ck Tea Society v City of Boston 378, F. 3d 8, 18 (1st Cir., 2004) made the following remarks that are relevant to the Defendants' Motion:

> "We have recognized the general proposition that '(o)ur system of justice does not encompass ex parte determinations on the merits of cases in civil litigation.' Assoc. For Reduction of Violence v. Hall, 734 F. 2d 63, 67 (1st Cir. 1984). Yet some precedents from other circuits suggest that ex parte determinations may be allowable 'when the submissions involve compelling national security concerns or the statute granting the cause of action specifically provides for in camera resolution of the dispute.' Vining v Runyon, 99 F. 3d 1056, 1057 (11th Cir. 1996); see also Molerio v FBI, 749 F. 2d 815, 825 (D.C. Cir. 1984) Although we have not had occasion to consider whether compelling national security concerns may in exceptional circumstances justify the ex parte consideration of privileged information, this case might have presented an opportunity to address the issue.[2] As the district court noted, the DNC was designated by the President as a Special Security Event, with the Secret Service designated as the lead federal agency

---

[2]The Trial Court received information ex parte, specifically stated in its decision that it did not rely on the information in arriving at its decision on the merits, and caused the information along with the stenographer's notes to be sealed but to be available for review upon appeal. The Appellants did not challenge the ex parte procedure on appeal, and the appellate court did not review the sealed file. Id. at 18  Judge Lipez's remarks reflect extant legal authority for ex parte, in camera proceedings that touch upon the merits of a case.

in the design, planning, and implementation of security measures.  However, as far as I can tell, there was no attempt by the defendant to establish the factual predicates for the national security exception.  Thus, the record is devoid of intelligence specific to this event."

There is no statutory authority for the Court to conduct an in camera, ex parte proceeding in a naturalization case.  Cmp. §310(c), Immigration and Nationality Act (INA), 8 U.S.C. §1421(c) and §336(b), INA, 8 U.S.C. §1447(b) to 50 U.S.C. §1702(c), International Emergency Economic Powers Act (IEEPA) and 8 U.S.C. §1189(b)(2), Anti-Terrorism and Effective Death Penalty Act (AEDPA) which specifically allow in camera, ex parte proceedings in certain cases. Clearly Congress knows how to provide authority for the in camera, ex parte proceeding.  It chose not to do so with respect to naturalization proceedings in the courts.

Without showing statutory authority for an in camera, ex parte proceeding, Defendants would need to  established a compelling national security concern that would warrant the proceeding.   Defendants have yet to make such a showing.  As noted above, it is not clear from their filings that Defendants actually possess classified information.

Even with classified material, Defendants  have not shown by affidavit or otherwise that the material raises a compelling national security concern sufficient to warrant an ex parte, in camera proceeding.  Executive Order 12356 on classification divides national security information into three levels—'top secret', the disclosure of which could reasonably be expected to cause exceptionally grave damage to national security, 'secret', the disclosure of which could be expected to cause serious damage to the national security, and 'confidential' the disclosure of which could be expected to cause damage to the national security.  §1.1, Ex. Ord.

3

12356, April 2, 1982. In addition, reasonable doubt as to whether material should be classified is resolved in favor of classification. Id. In light of the different levels for classifying national security information and also the directive to resolve doubt in favor of classification, Defendants certainly do not establish a compelling national security concern that warrants an in camera, ex parte proceeding by reciting that the may have classified material to present.[3]

**Defendants motion to remand Plaintiff's case should be denied as Defendants no longer are able to adjudicate Plaintiff's naturalization application dispassionately; in addition, Defendants gain nothing through another interview that could not be gained during the Court hearing on the application; a remand only delays adjudication of an application that has been pending for nearly five years.**

Defendants claim they have information which would warrant further investigation of the Plaintiff. They believe a remand is the most appropriate means for conducting the further investigation. Thus, they seek a remand, either to allow the USCIS to make its own determination of the Plaintiff's application for naturalization or else to allow it to conduct another interview of Plaintiff prior to the Court's determination of the case.

The Defendants have not made out a case for an ex parte, in camera review of the information they claim to possess. Accordingly, the Court ought not conduct the ex parte, in

---

[3]Plaintiff's objection to the in camera, ex parte proceeding is not based on any fear of material that may be presented. Rather, it goes to the nature of the society that Plaintiff hopes to live in as one of its citizens. "Democracies die behind closed doors." Detroit Free Press v. Ashcroft 303 F. 3d 681, 684 (6th Cir., 2002) holding unconstitutional the directive of the Chief Immigration Judge to close to the public deportation hearings of 'special interest' and then to conduct the proceedings in secret, all in the name of national security. Motions for in camera, ex parte proceedings require the most careful of examination and treatment to protect cherished First Amendment rights of the Press and Fifth Amendment Due Process rights of the individual.

4

camera review.   Lacking evidence (whether it be under seal or not) that would support continued investigation of the Plaintiff, a remand is inappropriate.

Plaintiff applied for United States citizenship May 4, 2001.  United States Citizenship and Immigration Services examined Plaintiff November 3, 2004.  Nearly five years have gone by since Plaintiff applied for United States citizenship and yet the government wants to conduct more investigation, this time based on secret evidence.  Plaintiff was examined once by USCIS; he  testified that he was examined in person by the Federal Bureau of Investigation; he underwent cross-examination in this Court from USCIS.  The government again wants to question Plaintiff. At some point, questioning needs to come to an end.

Moreover, to remand Plaintiff's case to the agency that sat on the case for nearly five years and then demonstrated its view of Plaintiff and his case  by directing its attorney to stipulate to nothing at trial and to contest each issue is to place Plaintiff in harm's way.  It is one thing for the Defendants to put the Plaintiff on strict proof in establishing to the satisfaction of the Court, as well as to the Defendants,  that he is and has been a person of good moral character during the statutory period; it is a different matter, however, for the Defendants to state they want another opportunity to adjudicate Plaintiff's case when they have just argued that he is not a person of good moral character.    Clearly, the Defendants have heard and tested the evidence and have found Plaintiff wanting.   It is unrealistic to expect the Defendants, upon a remand,  to approve Plaintiff's application for naturalization as they already have decided one of the central issues for a grant.

Upon remand, judicial review of an adverse decision is years down the road.  Plaintiff first has to undertake an administrative appeal.  8 C.F.R. §336.2(b).  Only when the dministrative

5

appeal is decided can Plaintiff obtain judicial review.  §310(c), INA,  8 U.S.C. §1421(c),  8

C.F.R. §310.5(b).   While the  reviewing officer is to schedule a review hearing within 180 days

of the appeal, neither statute nor regulation imposes any time for an administrative decision

following the review hearing.  Id. Thus, Defendants could sit on Plaintiff's administrative appeal,

following their adverse decision, for an indefinite period.

    Defendants state that, as an alternative to a remand that allows Defendants to adjudicate

Plaintiff's application for naturalization, the Court should remand the case to Defendants so they

again could interview the Plaintiff.   Plaintiff has submitted himself to this Court for

examination.  Defendants have had an opportunity to question him in open court on all issues

relevant to his application for naturalization.  If Defendants now have secret evidence that bears

on Plaintiff's application and if they want to use this secret evidence in any manner in their

questioning of Plaintiff, it makes no difference whether the questioning is done through the

interview process or in open court since Plaintiff (as well as Plaintiff's counsel) becomes aware

(even dimly) of a general outline of the evidence.   The existence of 'classified' information does

not spell the difference between an examination in court and an interview in the confines of an

examiner's office.  In either locale, the participants become aware of as many facts as the

government is prepared to reveal.  Thus, all rationale disappears for one final interview prior to

this Court's determination of the issue.

    A remand for the limited purpose of an interview defers a decision on the naturalization

application that already has been too long in coming. Because Defendants have had their day in

Court on all issues that bear on Plaintiff's application, they should not now be allowed to stall

the time of decision any further.

**<u>Plaintiff is and has been a person of good moral character during the statutory</u>**

**<u>period, and this Court should grant his application for naturalization and administer the</u>**

**<u>oath of citizenship.</u>**

_____§336(b), INA, 8 U.S.C. §1447(b) and 8 C.F.R. §310.5(b) allow the Court either to

determine the issues brought before it on their merits, or remand the matter to the Service with

appropriate instructions.

Once the remand is addressed and denied, the remaining, undetermined issue is whether

Plaintiff is and has been a person of good moral character during the statutory period—the five

years immediately preceding the filing on May 4, 2001 of the application for naturalization.[4]

Good moral character standards are set out at  §101(f), INA, 8 U.S.C. §1101(f) and by

regulation at 8 C.F.R. §316.10.   Based on the trial testimony, the relevant subsection of §101(f),

INA, 8 U.S.C. §1101(f) is subsection (3) which states that a person cannot be regarded as a

person of good moral character if during the statutory period he has committed a crime that

would render him inadmissible under §212(a)(2)(A) or(B) of the Act.

With respect to §212(a)(2)(A) or (B), the issue for Plaintiff is whether he committed a

crime of moral turpitude from and after May 4, 1996.  Exhibit 5 shows Plaintiff was charged on

September 25, 1995 with assault and battery, a crime of domestic violence, that the offense was

---

[4]The five year statutory period is set forth at §316(a), INA, 8 U.S.C. 1427(a).  Although
Plaintiff alleged that his naturalization application  of May 4, 2001 is the application at issue, it is
noteworthy that he filed another application on June 18, 2004 and that USCIS examined him on
the later application at the time (November 3, 2004) it examined him on the May 4, 2001
application. (See Exs. 1 & 4)  Plaintiff's required five years of good moral character could very
well be the five years immediately preceding the filing of June 18, 2004 rather than the five years
immediately preceding the filing of May 4, 2001.  Irrespective of the period used, Plaintiff has
been and continues to be a person of good moral character.

committed September 24, 1995, that the District Court in Peabody, Massachusetts continued the case until December 10, 1996 but found sufficient facts to warrant a finding of guilt, and then dismissed the case on December 10, 1996.  Plaintiff himself testified that he scuffled with his wife on September 24, 1995 and pushed her to the sofa.  He stated that no harm occurred, although his wife was scared and distressed by the incident. He testified that he and his wife resumed normal marital relations without further incident following this occurrence.   This offense occurred more than five years prior to Plaintiff's application for naturalization.  Thus, it does not establish that he lacks good moral character.

Exhibit 3 contains four offenses arising July 6, 1996—operating an uninsured motor vehicle, operating an unregistered motor vehicle/trailer, attaching plates to a motor vehicle, and operating a motor vehicle without an inspection sticker.  Two of the offenses were continued without a finding of guilt to December 18, 1996.  Two were simply placed on file. Plaintiff paid a fine of $100.00.   Moral turpitude involves acts that shock the public conscience, that are base, vile or depraved, or that involve an evil intent.  See 6 Immigration Law and Procedure, §71.05[1][d]. Gordon, Mailman & Yale-Loehr for discussion of moral turpitude. None of these offenses are crimes of moral turpitude covered by §212(a)(2)(A), INA.   Accordingly, none of these offenses preclude a finding that Plaintiff is a person of good moral character.

Defendants asked Plaintiff to discuss an ex parte restraining order that arose in late 1995. Plaintiff stated that he was the subject of a restraining order and that he took no steps to cause it to be vacated during its thirty day period as he saw no need to do so.  Again, the event, whatever it

was, is outside the statutory time period.[5]

Defendants then queried Plaintiff about his applications for naturalization.  They asserted that he was 'convicted' of the 1995 assault and battery offense and noted on his 2004 application for naturalization (Ex. 4) in response to question 18  that he was convicted of no offense.  They also asserted that he was  placed on probation and again noted in response to question 20 on his application that he was not placed on probation.  Plaintiff responded that he never thought he was convicted of the assault and battery offense as his  lawyer at the time told him that the continuance without a finding, coupled with a subsequent dismissal, was not a conviction.[6]  He also testified that the trial court directed him to be on good behavior for one year and then his case would be dismissed which, when he completed his application for naturalization, he did not perceive  as probation.  Be that as it may, he fully disclosed in his application the offense that gave rise to the probation, including the fact that on December 10, 1996 the assault and battery case was dismissed "at the request of the probation."  (Ex. 4, with supplement) Plaintiff's in court explanation of his failure to list his 1995 continuance without a finding of guilt

---

[5]Not only is the event described in this paragraph and the events described in the preceding paragraphs outside the five year period immediately preceding Plaintiff's filing on May 4, 2001 of his application for naturalization, they now are nearly ten years old.  Reaching beyond the five year time period is reserved for the most heinous of offenses, e.g. murder at any time and an aggravated felony committed after November 29, 1990.  8 C.F.R. §316.10(b)(1).  To reach back more than five years prior to the application for naturalization and nearly ten years after the offense is to place Plaintiff's conduct in the same category as murder or an aggravated felony and is contrary to law.

[6]The Massachusetts Supreme Judicial Court in Commonwealth v Villalobos, 437 Mass. 797, 803 (2002) noted that a lay person's "likely perception that a continuance and 'dismissal' of a charge is not a 'conviction' of that charge" will lead to confusion between Massachusetts criminal law and Federal immigration law.   The Court then recommend that all trial judges thereafter warn alien defendants that continuation without a finding of guilt, coupled with a dismissal, could be treated under Federal immigration law as a conviction.

and ultimate dismissal as a conviction or his punishment as probation demonstrates no lack of good moral character when the offense itself is fully disclosed on the applications.[7]

Defendants then questioned Plaintiff about L Ward Consulting.  Defendants noted that Plaintiff did not list L Ward Consulting as an employer on his applications for naturalization. Plaintiff testified that L Ward Consulting was a name he himself had used to provide IT (information technology) consultation services to others.   He testified that L Ward Consulting was not an entity separate and apart from himself.   He testified that he never thought of L Ward Consulting as an employer and consequently did not think of listing L Ward Consulting on his forms.

Plaintiff's omission of L Ward Consulting,  his misstatement that he had not been placed on probation and his misstatement that, under Federal immigration law, he had not been convicted of an offense needs to be assessed in the light of  §101(f)(6), INA, 8 U.S.C. §1101(f)(6).  That section precludes a finding of good moral character if during the statutory period the alien has "given false testimony for the purpose of obtaining any benefits under" the Immigration and Nationality Act. The foregoing applies exclusively to oral statements, made under oath, which are misrepresentations made with the subjective intent of obtaining immigration benefits.  Kungys v. United States, 485 U.S. 759, 780, 108 S. Ct. 1537,1551,  99 L.Ed. 2d 839, 859 (1988).   When Congress specified the type of false statements that could be used to find an alien lacked good moral character, it set the standard. Plaintiff's omission and innocuous misstatements do not begin

---

[7]The United States Citizenship and Immigration Service certainly could have  corrected Plaintiff's naturalization form in 2004 when it examined Plaintiff.  See 8 C.F.R. §335.2(c) In correcting the form, the examiner would have turned Plaintiff's responses to questions 18 and 20 (Ex. 4) from negative to affirmative,  thereby conforming to the facts disclosed in the filing itself and upon examination.

to rise to the type of conduct that compels a finding that Plaintiff lacks good moral character.

**Conclusion**

_____Plaintiff respectfully asks the Court to deny Defendants' Motion for leave to file materials under seal for ex parte and in camera review.  Defendants have failed to establish through affidavit or other supporting material that compelling national security concerns warrant this extremely unusual procedure.

Plaintiff also asks the Court to deny Defendants' Motion to remand.  In the absence of any evidence (sealed or not) regarding the need for further investigation of Plaintiff, the remand itself is unjustified.  Moreover, because Defendants continue to assert that Plaintiff is not a person of good moral character, they already have decided a central issue against Plaintiff and no longer are capable of effecting an unbiased decision on Plaintiff's application for naturalization.  Finally, because Defendants can no more protect the secrecy of their classified information through an interview of Plaintiff than they could through an in court examination, a remand for the sole purpose of conducting the interview is without a rational basis.

Plaintiff has shown that he is and has been a person of good moral character during the time period required by law.  Accordingly, he asks this Court to approve his application for naturalization and to then administer the oath of citizenship.

_____Dated this 6th day of February 2006.

Nabil Shalan, Plaintiff,

/s/ Vard R. Johnson
Vard R. Johnson, BBO # 660137
Suite 210, 18 Tremont Sreet
Boston, Massachusetts 02108
        1-617-557-1711
        1-617-557-4711

11

vardinboston@verizon.net
Plaintiff's Attorney

## CERTIFICATE OF SERVICE

I, Vard R. Johnson, certify that I served the foregoing Response to the Defendants' Motion For Leave to File Materials Under Seal For In Camera and Ex Parte Review and to Remand upon Mr. Michael Sady, Mr. Mark Quinlivan, and Mr. Mark Grady, Assistant United State Attorneys, John Joseph Moakley U.S. Courthouse, `1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210 by electronic filing, effected February 6, 2006.

/s/ Vard R. Johnson
Vard R. Johnson