UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NABIL SHALAN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>MICHAEL CHERTOFF, Secretary of )<br>Department of Homeland Security, et al., )<br>)<br>Respondents. )<br> ) | Civil Action No. 05-10980 RWZ |

**MOTION FOR LEAVE TO ALLOW USCIS TO CONDUCT INTERVIEW OR,
IN THE ALTERNATIVE, TO SUPPLEMENT THE RECORD**

Respondents Michael Chertoff, Secretary of the Department of Homeland Security, et al., hereby move this Honorable Court for leave to allow the United States Citizenship and Immigration Services to conduct a further interview of the petitioner, Nabil Shalan, to afford the Court -- which would retain jurisdiction to decide the pending naturalization case -- a more complete record upon which to determine petitioner's eligibility for naturalization. In the alternative, respondents move this Court for leave to supplement the record to include the accompanying Declaration of Adjudications Officer Barbara Johnson. The reasons for this motion are set forth more fully in accompanying Memorandum of Law and the accompanying Declaration of Adjudications Officer Barbara Johnson.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By: /s/ Mark T. Quinlivan
        MARK T. QUINLIVAN
        MICHAEL P. SADY
        MARK J. GRADY
        Assistant U.S. Attorneys
        John Joseph Moakley U.S. Courthouse
        1 Courthouse Way, Suite 9200
        Boston, MA  02210
        617-748-3600

Dated: April 18, 2006

## CERTIFICATE OF CONSULTATION UNDER L.R. 7.1

     Pursuant to Local Rule 7.1(a)(2), I certify that, on this date, I conferred with counsel for the petitioner, Vard Johnson, Esq., regarding this motion, and that Mr. Johnson stated that petitioner would oppose the motion.

        /s/ Mark T. Quinlivan
        MARK T. QUINLIVAN
        Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NABIL SHALAN,<br>Petitioner,<br>v.<br><br>MICHAEL CHERTOFF, Secretary of<br>Department of Homeland Security, et al.,<br>Respondents. | Civil Action No. 05-10980 RWZ<br><br>Declaration of Adjudications Officer<br>Barbara J. Johnson |

I, Barbara J. Johnson, pursuant to 28 U.S.C. § 1746, make the following declaration:

1). I am an Adjudications Officer currently assigned to the National Security Branch of the Office of Fraud Detection and National Security within U.S. Citizenship and Immigration Services (USCIS), an agency within the U.S. Department of Homeland Security (DHS), and am presently stationed at USCIS Headquarters.

2). I have been employed by the former Immigration and Naturalization Service, now USCIS, for approximately 17 years and 8 months. I have been an adjudicator since January 1989 and have specialized in the adjudication of form N-400, Application for Naturalization since October 1996.

3). In my present duties with USCIS, I regularly review files and applications of aliens seeking immigration benefits. This review frequently includes review of information arising from background checks that USCIS conducts. That information is frequently classified.

4). In the case of Nabil Mohammed Fadel SHALAN, Alien Registration number A45

1

060 956, one of the background checks has revealed classified information which required an extensive review of the entire case.

5). SHALAN has filed 3 different N-400s. On April 25, 2001, SHALAN withdrew the first application, filed June 26, 2000, after being informed his criminal history made him ineligible at that time based on his conviction for assault and battery. The second application, filed June 7, 2001, is the application under which he has filed the action pending before the United States District Court for the District of Massachusetts. The third application, filed June 18, 2004, is currently pending with USCIS and was in the record at the time of the November 8, 2004 interview.

6). I have reviewed aspects of the SHALAN's applications and have sought information from various law enforcement and intelligence agencies. The information obtained so far, while not complete, is sufficient to raise concerns on SHALAN's eligibility for naturalization.

7). SHALAN married Michelle Schmitz on March 22, 1995 and entered the United States on June 23, 1995 as the Conditional Resident Spouse of a United States Citizen. On September 25, 1995 he was arrested for assault and battery on her and on December 11, 1995 and was placed on probation until December 10, 1996. On April 14, 1997 he submitted a joint petition, Form I-751, Petition to remove the Conditions of Residence. On this petition he indicated that he had been and still was living in a bona-fide marriage with his United States Citizen spouse for the requisite two years. However, the terms of his probation did not allow him to be near her for at least one year, from December 1995 to December 1996 and neither of

them appeared for a scheduled interview to remove the conditions on September 2, 1997. Further, the record holds conflicting statements regarding their relationship in general and the actual date of their separation prior to divorce. This petition was denied and SHALAN was placed in removal proceedings. He filed another I-751 requesting a waiver and on January 18, 2001 an Immigration Judge granted the waiver.

8). A particular area of concern is the fact that SHALAN gave false testimony, under oath, during his interviews with USCIS on his applications for naturalization on April 25, 2001 and again on November 8, 2004. On April 25, 2001, he claimed that he was divorced, not married at the time, and that he had only been married "once" (1 time) to Michelle Schmitz. However, he was married to his current wife, Nahed Shaban at the time. The record contains a certificate submitted with his second application for naturalization that shows he married her in Jordan on December 23, 2000. It is noted that Nahed Shaban entered the United States March 18, 2001 as a B-1 non-immigrant visitor, not the spouse of a Lawful Permanent Resident and is apparently living illegally in the United States at this time.

9). Further, at the November 8, 2004 interview SHALAN claimed that he had never been convicted and had never received a suspended sentence or been put on probation when, as is apparent from court dispositions and his own previous testimony that he had been on probation for one year as a result of the assault charge in 1995. SHALAN was in fact on probation during part of the statutory period immediately preceding filing his first N-400 in 2001. SHALAN also stated that he had never used any name other than Nabil Shalan or Nabil Mohammed Shalan. However, public source records show that he frequently used the names Nabil Fadel Shalan,

Nabil Fadelshalan and particularly Nabil Fadel. Lack of complete disclosure of all aliases at the beginning and during the process not only reflects poorly on his "good moral character", but delayed the name check process. All names and variations of names, particularly surnames, must be researched and cleared.

10). Another area of concern is whether SHALAN has engaged in criminal conduct during the time he is required to show good moral character. I have had discussions with the Peabody, Massachusetts Police Department, which informed me that SHALAN, was investigated for embezzlement from his former employer, Precision Connector Design (PCD) during his time of employment with PCD from December 1998 to September 2001. The Peabody Police brought the FBI into the investigation because of potential federal violations including conspiracy and fraud. In an interview with SHALAN on February 3, 2003, the FBI and the Peabody Police Department learned that he created a company called "Al Ward Consulting Services (Al Ward)" as a way to bill for certain services outside the scope of his normal duties as the PCD's Network Administrator. During an April 2, 2002 interview with FBI and Peabody Police PCD officials alleged as part of their initial complaint that SHALAN created a "sham" company to defraud PCD by inflating invoices and using corporate logos belonging to companies such as "Sun Microsystems" and "Dell Computer Company" on the Al Ward Consulting Services invoices to make the recipients think that Al Ward was a sanctioned reseller or technical support provider. PCD officials also accused SHALAN of using tax identification numbers belonging to companies such as Compaq Computer Corporation to make invoices appear credible.

4

11.) It should be noted that the FBI concluded and closed their investigation on August 15, 2003. On January 19, 2006 the FBI furnished a memo to USCIS indicating that "No substantive federal violations were identified as a result of investigative efforts, and no counterterrorism nexus has been established" as a result of a name check for "Nabil Shalan". However, I was informed by the Peabody Police Department on March 13, 2006 that their investigation remains open, but not active, "in case" Sun Microsystems and Dell Computer Company decide to pursue Massachusetts's fraud statutes regarding SHALAN's use of their letterheads.

12). SHALAN admitted during the February 3, 2003 interview with FBI and police to using the corporate logos and acknowledged that it was improper to do so. SHALAN also acknowledged that he never filed paperwork with the Commonwealth of Massachusetts to establish Al Ward as a company and did not know for sure if he had paid taxes on the income that he collected through Al Ward. SHALAN stated that the income was between $10,000 to $15,000. SHALAN was fired from PCD in September of 2001.

13). Concerns that he may have embezzled from PCD is not the first time that there have been allegations or admissions of conduct showing a lack of good moral character related to SHALAN's places of employment.

14). When asked about his arrest record during an interview on May 17, 1999, SHALAN admitted to a USCIS officer that he had had a problem with his prior employers accusing him of larceny involving Sbarro's July 1995 and Taco Bell in November 1996. While these incidents may not have resulted in convictions and may be outside the statutory period they

5

suggest a pattern and lack of reformation of character.

15). SHALAN was charged with grand theft and received detention in San Bernardino California on May 20, 1992 and with larceny on December 22, 1995 in Peabody Massachusetts but was not convicted.

16). Additionally, SHALAN has apparently provided false testimony regarding his employment during the November 8, 2004 interview. He indicated that he was not employed at all from October 2001 to February 2003. However when the FBI interviewed him on March 17, 2003 he stated that he had been working as a cab driver at Ambassador Cab in Cambridge, Massachusetts from the time he was terminated by PCD until about January of 2003.

17). The different applications are not consistent on addresses for SHALAN. On the 2000 N-400 he shows that he lived at 30 Lyon St, Pawtucket RI from June 1998 to December 1998, on an attachment to the N-400 filed in 2001 he shows May 1999 to December 1999 for that address and on the 2004 N-400 he shows that he was living at 3 Roslyn Street Ct, Salem MA from May 1999 to October 2000. He does not show living in Rhode Island at all on the 2004 application. An applicant for naturalization is required to give truthful testimony in an interview for naturalization regardless of the materiality of the information. It is not clear from the review of the file that SHALAN has in fact given truthful information of his marital status, relationships, residences and employment in light of the differences in the applications he has filed and other information contained in the record. It is also not clear that SHALAN has complied with his tax obligations regarding income derived from PCD via AL WARD.

I declare, under penalty of perjury, that the foregoing is true and correct.

_4-14-06_
Date:

_____
BARABARA J. JOHNSON
Department of Homeland Security
U.S. Citizenship and Immigration
Service
Washington, D.C.
Telephone: (202) 272-8448