UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10980-RWZ

NABIL SHALAN

v.

MICHAEL CHERTOFF, as Secretary of the Department of Homeland Security;
EDUARDO AGUIRRE, as Director of the U.S. Citizenship & Immigration Services;
DENIS C. RIORDAN, District Director of the U.S. Citizenship & Immigration Services for Boston, Massachusetts

MEMORANDUM OF DECISION

May 9, 2006

ZOBEL, D.J.

    Five years ago, plaintiff Nabil Shalan filed an application for citizenship. He has been responding to inquiries by the U.S. Citizenship & Immigration Services ("USCIS") ever since, and after years of waiting for a determination, filed the instant suit against defendants Michael Chertoff, Secretary of the Department of Homeland Security, Eduardo Aguirre, Director of USCIS, and Denis Riordan, District Director of USCIS for Boston, Massachusetts. At a hearing on the matter, the parties presented evidence regarding plaintiff's moral character. At the close of the evidence, defendants represented to the court that they possessed classified information in support of their request for remand of the matter to USCIS. They requested an in camera review and, following the hearing, filed a formal motion for leave to provide the materials ex parte and under seal, asserting that "[i]n this case, as set forth during the hearing, the Government has come across information that appears to be of a classified nature and

which, in its view, would warrant further investigation of [plaintiff]." (Defs.' Mem. for Leave to File Under Seal 4). Inexplicably, on April 4 of this year, defendants withdrew this request, explaining that "[a]fter completing a full file review of information received from the Federal Bureau of Investigation [(FBI)], [defendants] have concluded that there is no classified information that bears on [plaintiff]'s application for naturalization." (Defs.' Withdrawal of Mot. 1).

Two weeks later, defendants moved for leave to re-open the record so that USCIS may provide another affidavit and conduct a further interview with respect to plaintiff's application. Apparently, defendants believe that "information received from the FBI has revealed matters . . . which, in view of USCIS, raise questions regarding [plaintiff]'s eligibility for naturalization." (Defs.' Mem. for Leave to Conduct Interview 1). Defendants offer no explanation for why this information could not have been presented at the hearing. The motion is denied. Defendants' description of the would-be evidence – plaintiff's statements in support of a prior application not before this court and the findings from an inactive investigation of his computer consultancy activity that resulted in no substantive federal violations – does not compel a re-opening of the record for either an interview or an additional declaration. It is in part untimely and in part cumulative.

Plaintiff's application for naturalization is therefore ripe for decision. Although naturalization requires satisfaction of several factors, the parties agreed at the hearing that the only issue remaining with respect to plaintiff's application is whether he demonstrates good moral character. See 8 U.S.C. § 1427. The statute lists factors

2

that demonstrate the absence of good moral character which include that the applicant either is or was (1) a drunkard, (2) ineligible for a visa or admission to the United States on the basis of health-related, criminal or security grounds, labor certification issues, being a "public charge" (e.g., needing public assistance), illegal entry, insufficient documentation, ineligibility for citizenship, previous removal as an alien, or other miscellaneous grounds, (3) a professional or convicted gambler, (4) a provider of false testimony in order to obtain immigration benefits, (5) serving a sentence of incarceration for an aggregate period of 180 days or more, (6) convicted of a felony, or (7) a participant in Nazi, genocidal, torture or extrajudicial killing activity. See 8 U.S.C. § 1101(f).

   Defendants rely on none of the above factors. They do offer other reasons for their position that defendant lacks good moral character. None is persuasive. First, defendants pointed to plaintiff's failure to classify a prior assault and battery charge as a conviction on his application. In September of 1995, plaintiff's wife at the time accused him of assault and battery with respect to a domestic argument about a remote control (as explained by the wife in an affidavit included with his application, according to plaintiff). The state court case was "continued without a finding," and after plaintiff served a year of administrative probation, the probation department recommended dismissal of the charge. On his application for naturalization, plaintiff reported the charge as having been dismissed, and I credit his testimony that he did so because he misunderstood the legal import of the "continued without a finding" determination. This confusion may indicate poor judgment by plaintiff in not consulting an immigration

attorney before completing his application, but it does not reveal anything negative about his moral character.

Second, defendants raised the issue of a 30-day civil temporary restraining order ("TRO") issued against plaintiff as requested by a former girlfriend in December of 1995.  According to plaintiff, he went to the former girlfriend's workplace and immediately thereafter was served with a copy of the TRO.  Because he respected its terms, he never spoke with her to understand why she obtained it.  The girlfriend never sought a permanent order.  When defendants recommended that a negative inference be drawn from the fact that plaintiff never sought to vacate the TRO, he explained that he had no problem with the requirement that he not contact her and thus did not perceive a need to challenge the order, and I believe this explanation.  The issuance of an isolated TRO based on a unilateral, ex parte petition that never developed into a permanent order cannot fairly be held against plaintiff as evidence of bad moral character.

Third, defendants raise a red flag regarding plaintiff's employment as a network administrator by Peripheral Component Devices ("PCD").  In 2004, the FBI interviewed plaintiff regarding potential embezzlement reported by PCD, because plaintiff received seemingly random checks from PCD in addition to his regular salary.  Plaintiff explained – with no opposing evidence from defendants – that he performed extensive additional work for PCD at the end of 1999 in order to safeguard PCD's computers against potential system failures resulting from the year 2000 (commonly referred to as "Y2K").  Through an arrangement approved by plaintiff's Data Supervisor, PCD paid

4

him separately from his salary as a consultant for these efforts.  Plaintiff accepted these payments as Al Ward, the business name he uses for his independent consultancy.  The government pursued no further investigation of this matter, and no federal or state charges ever resulted.

Last, defendants argued that plaintiff's passport at the time he first arrived in the United States did not reflect his true name.  Plaintiff testified that it is customary in Jordan, his home country, to include the full family name, "Nabil (Mohamed Fadel) Salim Shalan," on one's passport.  (Defs.' Ex. 8).  I credit that testimony, as defendants offer no rationale to support their characterization of the inclusion of plaintiff's family names Mohamed and Fadel as devious.

Plaintiff's application discloses each of the four times he left the United States during the prior five years, and I believe his further testimony that he left one additional time for a four-day Disney cruise since filing the application.  He testified to paying his taxes and filing his returns and not engaging in any unlawful gambling.  I find that plaintiff has sustained his burden of demonstrating good moral character.  Accordingly, his application for naturalization is granted.

|  |  |
|---|---|
| _____<br>    DATE | /s/ Rya W.Zobel<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |