THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NABIL SHALAN, ) <br>     Plaintiff ) <br> ) <br> V. ) <br> ) CIVIL ACTION NO.05-10980-RWZ <br> MICHAEL CHERTOFF, as Secretary of the ) <br> Department Homeland Security; EDUARDO ) <br> AGUIRRE, as Director of the U.S. Citizenship & )    MEMORANDUM IN SUPPORT <br> Immigration Services; DENIS C. RIORDAN, ) OF PLAINTIFF'S APPLICATION FOR <br> District Director of the U.S. Citizenship & )     FEES AND COSTS UNDER <br> Immigration Services for Boston, Massachusetts )    THE EQUAL ACCESS TO JUSTICE <br>     Defendants )                     ACT | |

Plaintiff Shalan seeks an award of attorney's fees and costs under the Equal Access to Justice Act (28 USC §2412(d)).

Because Plaintiff Shalan is the prevailing party in this action for naturalization, the government has the burden of proving by a preponderance of evidence that its position was substantially justified.  De Allende v. Baker, 891 F. 2d. 7, 12 (1st Cir., 1989).  To satisfy the burden, the government must justify both its pre-litigation conduct and its position throughout the litigation. United States of America v. One Parcel of Real Property, 960 F. 2d 200, 208 (1st Cir., 1992); McDonald v. Secretary of HHS, 884 F. 2d 1468, 1475-76 (1st Cir., 1989)  The position taken by the United States in court and 'the action or failure to act by the agency' are considered the 'position of the United States'.  Dantran, Inc. And Holmes v. United States Department of Labor, 246 F. 3d 36, 41 (1st Cir., 2001)

The test for determining whether the position of the United States was substantially justified is whether the government had a reasonable basis both in law and in fact for its position, and the facts supported its theory.  De Allende v. Baker, supra, at 12

**Defendants' pre-litigation position was not substantially justified**.

Defendants' pre-litigation activities were those of delay and inaction.  Plaintiff filed his application for naturalization on May 4, 2001.  Defendants examined Plaintiff on November 3, 2004—some three and a half years later.  When six months passed after the November 3, 2004 examination without a decision,  Plaintiff commenced this action.  As a result of the litigation, this Court conferred United States citizenship by way of naturalization upon the Plaintiff on August 23, 2006.  Defendants' delay denied Plaintiff United States citizenship for five years.

The pre-litigation delay and inaction was not substantially justified.  The Court found that 8 C.F.R. § 335.2(b) required Defendants to complete the FBI investigation of the Plaintiff before they scheduled Plaintiff's naturalization exam.  (Filing 12, p. 3)   The Court also noted that the Defendants offered no facts specific to the Plaintiff for a delay of three and a half  years in completing their review of Plaintiff's application for naturalization.  (Filing 12, p. 3)  Thus, there is no factual basis in the record to support a  pre-litigation delay of four years in processing and adjudicating the application.

Unexplained pre-litigation delays in processing immigration cases merit EAJA awards. Jeffrey v. INS, 710 F. Supp. 486, 488 (S.D.NY, 1989)(16 months following application to adjust status with no decision); Achaval-Bianco v. Gustafson, Jr., 736 F. Supp. 214, 217 (C.D. Ca., 1989)(14 aliens with delays in adjudication ranging from 1 to 3 years.); Su Chen v. Slattery, 842 F. Supp. 597, 599 (D.C., 1994)(6 months to adjudicate an application for employment

authorization); <u>Nadler v. INS</u>, 737 F. Supp. 658 (D.C., 1989)(14 months following application to adjust status with no decision). The United States District Court in <u>Salem v. USA Immigration and Naturalization Service,</u> 122 F. Supp. 2d 980, 985 (C.D., Ill, 2000) awarded EAJA fees in finding that the government's actions were not substantially justified with a four year delay in the processing of a naturalization application.

**<u>Defendants' litigation position was not substantially justified.</u>**

Defendants never filed a Responsive Pleading in this case.  Thus, they formally have articulated no litigation position.  At the merits hearing of January 26, 2006, Defendants required Plaintiff to prove all aspects of his application for naturalization, to wit: admission as a lawful permanent resident, years of residency in the United States, adherence to the Constitution, satisfaction of the English language requirement, satisfaction of the history and civics requirement, and possession of good moral character.  At the conclusion of the hearing, Defendants orally opposed Plaintiff's application for naturalization, claiming Plaintiff did not prove himself to be a person of good moral character.  They did not follow up on this claim, however, with a post-trial brief that would make their point.  Instead they moved the Court to hold an in camera, ex parte hearing on secret evidence.  Two months later, they withdrew their Motion.

Following the withdrawal, Defendants moved the Court for leave to interview the Plaintiff or else to receive in the record the Affidavit of a USCIS Adjudications Officer.  (Filing 20)  In their memorandum of support for their motion, Defendants did not state that Plaintiff was a person who lacked good moral character during the statutorily prescribed period.  Rather, they claimed that their post-trial investigation raised concerns or questions which they wanted an

opportunity to address, either through another interview of the Plaintiff or else through the Court's receipt of the Affidavit of the USCIS official. (Filing 21)   Defendants' litigation posture of concerns and questions is simply an extension of its pre-litigation position of delay and inaction.  Defendants clearly were unwilling to adjudicate Plaintiff's naturalization application when they had jurisdiction to do so and similarly were unwilling to tell the Court that, based on the evidence before the Court, Plaintiff lacked good moral character.

Even if the Defendants directly claimed Plaintiff to lack good moral character, that assertion was not substantially justified.  The Court noted that Defendants cite no acts that fall within the purview of 8 U.S.C. § 1101(f) 1-9's bright line tests for lack of good moral character. (Filing 23, p. 3).  Rather, according to the Court, Defendants claimed Plaintiff to lack good moral character because (a) he made a disclosure error on his naturalization application, (b) he was the subject of a 30 day civil temporary restraining order in December 1995, (c) he was interviewed by the FBI in 2004 regarding potential embezzlement from an employer, and (d) he used different names on his passport than he disclosed on his naturalization application. (Filing 23, p. 5)

None of the foregoing provide substantial justification for a claim that Defendant lacked good moral character and should be denied naturalization.

A person does not lack good moral character because he claims correctly as a matter of State law on his naturalization application that he was not convicted of an offense but nevertheless makes disclosure on the application of the offense itself, including its dismissal 'at the request of the probation.'   In making the disclosure of the offense,  Plaintiff intended to hide nothing about his past.   The Court determined that Plaintiff's incorrect characterization on his

naturalization application of the conviction and probation 'did not reveal anything negative about his moral character.' (Filing 23, p. 4)

The 30-day civil temporary restraining order issued against Plaintiff does not substantially justify Defendants' claim that Plaintiff lacks good moral character. First, the order itself was issued more than five year before Plaintiff filed his application for naturalization.[1] Reaching beyond the five year time period for assessment of good moral character is reserved for truly serious offenses, e.g. murder at any time and an aggravated felony committed after November 29, 1990. 8 C.F.R. § 316.10(b)(1). Second, as the Court noted, the restraining order was based on a unilateral, ex parte petition that never developed into a permanent order. (Filing 23, p. 4)

Defendants questioned Plaintiff at length during the merits hearing about allegations by a former employer that Plaintiff embezzled money. In answering Defendants' questions, Plaintiff admitted to no crime nor admitted to any factual basis for a criminal charge. Defendants offered no evidence that Plaintiff had embezzled any money or had admitted criminal misconduct. Defendants were not justified in claiming Plaintiff to lack good moral character on the basis of allegations by a former employer when there was no evidence that Plaintiff had committed or admitted to a crime.

Finally, Defendants claim that Plaintiff used a different name on his passport than on his application for naturalization. The Court found that Defendants offered no rationale to support any assertion that Plaintiff was devious in failing to show on his application for naturalization that he went by the name Nabil (Mohamed Fadil) Salim Shalan on his passport. (Filing 23, p. 5)

---

[1] Plaintiff filed his application May 4, 2001. According to the Defendants, the restraining order was issued in December 1995.

Without a rationale, these facts cannot support any theory that Plaintiff lacks good moral character.

As can be seen, neither the pre-litigation nor the litigation positions of the Defendants is substantially justified.

Plaintiff knows of no special circumstances that would make an award of EAJA fees unjust.

<u>The limited availability of qualified attorneys for the proceedings involved justifies a fee higher than the cap rate of $125 per hour</u>.

The Equal Access to Justice Act provides that the attorney fee award to the successful litigant is to be based upon prevailing market rates for the kind and quality of services furnished. It caps the award at $125.00 per hour. However, the Court can grant an award in excess of the cap when it 'determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys in the proceedings involved, justifies a higher fee." 28 USC 2412 §(d)(2)(A)

Plaintiff seeks an allowance for his attorney that is greater than the statutory cap. Specifically, he seeks for his attorney an hourly rate at $250.00.  He submits that his case required the services of a specialist in immigration law and that, as a practical matter, no such specialists were available to prosecute his case at the cap rate.

The base issue in determining whether a special factor justifies a fee in excess of the cap is whether the litigant could find qualified lawyers to handle his case at the cap rate or less. <u>Atlantic Fish Spotters Association v. Daley</u>, 205 F. 3d 488, 492-3 (1st Cir., 2000)  In addressing the issue, this Court must first determine that special experience in immigration law was

necessary or required for the competent representation of the Plaintiff in the case at issue. Id., at 492. It must then find that, as a practical matter, the Plaintiff would not have been able to find a lawyer with special experience in immigration law at the cap rate. Id., at 493.

The Plaintiff has submitted the Affidavits of his attorney Vard R. Johnson and immigration lawyer Anthony Drago Jr. Both Affiants are of the opinion that delayed naturalization cases require the services of skilled immigration lawyers because the stakes are high and the opportunity for missteps based on a lack of knowledge of immigration law is significant. Affiant Johnson states that the Shalan case itself had issues that could prove vexing to his client and required the services of a skilled immigration lawyer. Affiant Drago states that the prevailing market rate for the kind and quality of services provided Plaintiff was at $300.00 per hour. He also states that, as a practical matter, the Plaintiff could not find an attorney in the Greater Boston area to prosecute his case for $125.00 per hour. The Plaintiff submits that the approved fee rate for his attorney should be $250.00 per hour because of the limited availability of qualified attorneys at the cap rate.

In the event the Court does not agree with Plaintiff's assertion that the special factor justifies the rate in excess of the cap, Plaintiff asks for the cost of living adjustment. The cost of living adjustment is calculated by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers (CPI-U) for the years in which the attorney's work was performed, and then dividing by the CPI-U figure for March 1996, the

effective date of EAJA's $125 statutory rate. <u>Thangaraja v. Gonzales</u>, 428 F. 3d 870, 876-7 (9th Cir., 2005)[2]

**Conclusion**

Plaintiff respectfully requests the Court to award him an attorney fee of $14,437.50 for work performed from the inception of the case through the time of naturalization, for $3,812.50 on the fee application[3] plus whatever additional time is expended on the application at the rate of $250.00 per hour[4]. In addition, Plaintiff prays for recovery of his costs, to wit: $250.00 for the filing fee, $45.00 for the witness fee for Karen Hayden, and $36.00 for the process server fee.

Dated this 29th day of September 2006.

                Nabil Shalan, Plaintiff,

                /s/ Vard R. Johnson
                Vard R. Johnson, BBO # 660137
                Suite 210, 18 Tremont Sreet
                Boston, Massachusetts 02108
                    1-617-557-1711
                    1-617-557-4711
                vardinboston@verizon.net
                    Plaintiff's Attorney

---

[2] Plaintiff's attorney, Vard R. Johnson, made the COLA adjustment in his Affidavit in support of the Application for fees. He used the CPI-U of the Bureau of Labor Statistics for the Boston area. He did not differentiate a COLA adjustment for work done in 2005 from a COLA adjustment done for work in 2006. Because he included with his Affidavit the relevant CPI-U table, such differentiation could be calculated if necessary. He also has included the national CPI-U table in the event for this Court's use if necessary.

[3] EAJA fees are allowed for fee litigation and require no separate finding that the government's position in the fee litigation is not substantially justified. <u>INS v. Jean</u>, 496 U.S. 154, 160-166, 110 S.Ct. 2316, 2320-23, 110 L.Ed 2d. 134, 143-146 (1990).

[4] Should the Court decline to approve the departure from the cap by reason of a special factor, Plaintiff prays that the hourly rate be adjusted to reflect the increase in cost of living since March 1996.

## CERTIFICATE OF SERVICE

I, Vard R. Johnson, certify that I served the foregoing Memorandum In Support of Plaintiff's Application for Fees and Costs upon Mr. Mark T. Quinlivan, Assistant United State Attorney, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210 by electronic filing, effected September 29, 2006.

                                                /s/ Vard R. Johnson
                                                Vard R. Johnson