## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| NABIL SHALAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-10980 RWZ |
| | ) | |
| MICHAEL CHERTOFF, Secretary of the | ) | |
| Department of Homeland Security, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

## MEMORANDUM OF LAW IN OPPOSITION TO
## APPLICATION FOR ALLOWANCE OF ATTORNEY'S FEES AND COSTS

Defendants Michael Chertoff, Secretary of the Department of Homeland Security, et al.,
hereby oppose plaintiff Nabil Shalan's Application for Allowance of Attorney's Fees and Costs
("Application"), brought pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.
Because the position of defendants  was substantially justified, plaintiff is not entitled to an award
of fees or costs under the EAJA.  See 28 U.S.C. § 2412(d)(1)(A).  Moreover, even if plaintiff was
entitled to an award of fees and costs, he is not entitled to an award in excess of the EAJA statutory
cap, with the exception of a cost-of-living adjustment, on the ground that there were a limited
availability of qualified attorneys in the proceedings involved that would justify a higher fee.  See
28 U.S.C. § 2412(d)(2)(A).  To the contrary, even a cursory examination of the docket in this district
reveals that there are numerous attorneys willing and able to handle naturalization and/or adjustment
of status actions.  Accordingly, plaintiff's application should be denied.

**STANDARDS**

A party who prevails in a civil action brought against the government is entitled to an award of attorneys' fees under EAJA if, "within thirty days of final judgment in the action," an application for fees is filed showing that the party is a prevailing party, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §§ 2412(d)(1)(A), (B).  The burden is on the government to show that its position was "substantially justified."  See Sierra Club v. Secretary of Army, 820 F.2d 513, 517 (1st Cir. 1987). As used in the EAJA, the term "substantially justified" does not mean "justified to a high degree" but instead means "justified in substance in the main--that is, justified to a degree that would satisfy a reasonable person."  Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Put another way, "substantially justified" means having a "reasonable basis in both law and fact."  Id.; accord United States v. Yoffe, 775 F.2d 447, 449 (1st Cir. 1985) (asking whether government's position was "reasonable both in law and fact").

**ARGUMENT**

**I.    THE POSITION OF THE GOVERNMENT WAS SUBSTANTIALLY JUSTIFIED**

Although the EAJA refers to a "prevailing party," 28 U.S.C § 2412(d)(1)(A), "the statute makes clear that courts are to examine both the prelitigation actions or inaction of the agency on which the litigation is based and the litigation position of the United States."  Schock v. United States, 254 F.3d 1, 5 (1st Cir. 2001).  As we now show, both the prelitigation and litigation positions of the government were substantially justified.

A.    **Prelitigation Position**

Plaintiff contends that defendant's prelitigation position was not substantially justified because it was characterized by "delay and inaction," and argues that "there is no factual basis in the record to support a pre-litigation delay of four years in processing and adjudicating the application." Memorandum in Support of Plaintiff's Application for Fees and Costs Under the Equal Access to Justice Act ("Pl. Mem.") at 2. That is incorrect. Contrary to plaintiff's assertions, the government specifically informed this Court that federal law prohibits USCIS from adjudicating a naturalization application until all background checks had been completed, and that plaintiff's national security check had not yet been completed.

Specifically, in moving to dismiss this action, defendants explained that Congress has directed that the government conduct a thorough background investigation of each applicant to confirm that the applicant is eligible for naturalization. See Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, to Remand ("Def. Mem.") at 4 (citing 8 U.S.C. § 1446(a)). That provision provides, in pertinent part:

> Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, shall conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his application for naturalization.

8 U.S.C. § 1446(a) (emphasis added). Moreover, in 1997, Congress enacted legislation which mandates that "none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization

unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997." Pub. L. No. 105-119, Title I, 111 Stat. 2448-2449 (Nov. 26, 1997), see 8 U.S.C. § 1446 Historical and Statutory Notes (Criminal Background Checks).

In this case, as explained by Karen Haydon, Assistant District Director of the Boston District Office of the U.S. Citizenship and Immigration Services ("USCIS"), as of September 21, 2006, plaintiff's national security checks, which were processed on June 30, 2004, had not been completed, and USCIS therefore was unable to adjudicate plaintiff's application. See Declaration of Karen Haydon ¶¶ 4, 6. Consequently, as a matter of federal law, USCIS was unable to adjudicate plaintiff's application. See 8 U.S.C. § 1446(a); Pub. L. No. 105-119, Title I, 111 Stat. 2448-2449 (Nov. 26, 1997. As one district court has explained:

> Absent the completion of the background check, CIS cannot use any of its funds to adjudicate the application. In practice, that means that the application will be placed 'on hold' until the background check is complete. If CIS does not make a decision within 120 days, and the applicant applies to the district court for relief, the court is in the same position as CIS--unable to make a decision on a naturalization application until all the facts are in, including the background check from the FBI.

Daami v. Gonzales, 2005 WL 1457862, at *6 (D.N.J. May 22, 2006); accord Essa v. U.S. Citizenship & Immigration Services, 2005 WL 3440827, at *2 (D. Minn. Dec. 14, 2005) ("The court, however, finds itself unable to adjudicate either application for the very reason CIS has been precluded from making a final decision--the FBI background check has not been completed."). Indeed, courts have concluded that, in the absence of a completed FBI background check, neither USCIS nor a federal court may adjudicate a naturalization application. See Alnabi v. Gonzales, 2006

WL 2990338, at *2 (D. Minn. Oct. 18, 2006) ("A court cannot adjudicate a naturalization application until the background check is complete."); Essa, 2005 WL 3440827, at *2 ("Furthermore, to adjudicate petitioner's application at this stage would contravene Congress's intent that an FBI background check is to be completed prior to the adjudication of every naturalization application."); El-Daour v. Chertoff, 417 F. Supp.2d 679, 683 (W.D. Pa. 2005) ("Yet the very reason that the CIS did not process El-Daour's application within 120 days of his examination prevents me from deciding his application.  The FBI has not yet completed his criminal background check."). Furthermore, as one court has noted, "unfortunately, delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world." Alkenani v. Barrows, 356 F. Supp.2d 652, 657 (N.D. Tex. 2005).

Hence, contrary to plaintiff's characterization of this case as one of unexplained and unjustified agency delay, USCIS was not able to adjudicate plaintiff's application until his national security checks had been completed and processed.  See 8 U.S.C. § 1446(a); Pub. L. No. 105-119, Title I, 111 Stat. 2448-2449 (Nov. 26, 1997).  To be sure, this Court no doubt "shares the widespread judicial concern and frustration that agency action on naturalization applications is unduly delayed in too many cases, including this one, by protracted FBI background checks that take months or even years to complete." Khelifa v. Chertoff, 433 F. Supp.2d 836, 844 (E.D. Mich. 2006).  However, as Judge Rosen recognized in Khelifa, USCIS cannot be deemed to have delayed its decisionmaking process where, as here, "it has merely waited, in accordance with a congressional mandate, for the FBI to complete its criminal background investigation of Plaintiff." Id.  Accordingly, the prelitigation position of the government was substantially justified.

- 5 -

B.    **Litigation Position**

The litigation position of the government also was substantially justified, both in (1) moving to dismiss plaintiff's complaint or, in the alternative, requesting that this Court remand the matter to USCIS for adjudication; and (2) arguing that plaintiff had failed to show that he had a good moral character at the hearing.

1.    **Motion to Dismiss or, in the Alternative, to Remand**

On October 3, 2005, defendants moved to dismiss plaintiff's complaint or, in the alternative, to remand the matter to USCIS pursuant to 8 U.S.C. § 1447(b).  With respect to the motion to dismiss, defendants argued, relying extensively on the decision in Danilov v. Aguirre, 370 F. Supp.2d 441 (E.D. Va. 2005),  that this Court lacked subject matter jurisdiction because the statutorily-required "examination" of plaintiff which would trigger the 120-day period provided for in § 1447(b) would not commence until plaintiff's national security checks are completed.  See Def. Mem. at 6-8.  With respect to the motion for remand, defendants argued that, because there has not been a final resolution regarding plaintiff's national security checks, USCIS was unable at that time to proceed to final adjudication of his naturalization application, and that a remand would allow USCIS to complete its investigation, once those checks were completed, and afford the Executive Branch the opportunity to use its expertise to investigate fully any concerns that may have arisen about plaintiff's background.  Id. at 8-11.

This Court denied defendants' motion on January 6, 2006.  This Court first rejected the government's contention that the 120-day time limit set forth in § 1447(b) was tolled because the investigation of plaintiff had not yet been completed, reasoning that § 1447(b) uses the term "examination," and that the time limit is triggered once USCIS conducted its examination (or

interview) of plaintiff, regardless of whether its investigation was completed. <u>See</u> Memorandum of Decision at 3. That this Court denied the government's motion is not mean that the government's position was not substantially justified, as the First Circuit has made clear. <u>See</u> <u>Schock</u>, 254 F.3d at 5 ("The mere fact that the government does not prevail is not dispositive on the issue of substantial justification.") (citing <u>De Allende</u> v. <u>Baker</u>, 891 F.2d 7, 13 (1st Cir. 1989)); <u>accord</u> <u>Kali</u> v. <u>Bowen</u>, 854 F.2d 329, 334 (9th Cir. 1988) (fact that government did not prevail in the case "does not raise a presumption that its position was not substantially justified."). Rather, as the D.C. Circuit has explained, the substantial justification standard is "separate and distinct from whatever legal standards govern the merits of the case," in which the court is "not wedded to the underlying judgment on the merits," but must engage in an "independent evaluation through an EAJA perspective." <u>FEC</u> v. <u>Rose</u>, 806 F.2d 1081, 1087 (D.C. Cir. 1986).

Moreover, in rejecting the government's position this Court expressly recognized that, "[d]ecisions by the handful of district courts that have considered this issue come out on opposite ends of the spectrum. One supports defendants' characterization, while another advocates plaintiff's arguments." <u>Id.</u> at 2 (citing <u>Danilov</u> and <u>El-Daour</u>). This, too, counsels against a finding that the government's litigation position was not substantially justified. "When the issue is a novel one on which there is little precedent, courts have been reluctant to find the government's position was not substantially justified." <u>Schock</u>, 254 F.3d at 6 (citing <u>Washington</u> v. <u>Heckler</u>, 756 F.2d 959, 961-62 (3d Cir. 1985)); <u>accord</u> <u>Minor</u> v. <u>United States</u>, 797 F.2d 738, 739 (9th Cir. 1986) (government position substantially justified where issues presented not "subject to resolution by clear, controlling precedent"). Indeed, even following this Court's decision of January 6, 2006, courts remain divided on this question, although this Court's decision is in accord with the "majority position." <u>Compare</u>

- 7 -

Said v. Gonzales, 2006 WL 2711765, at *1 (W.D. Wash. Sept. 21, 2006) (denying motion to dismiss and "declin[ing] to follow the reasoning of Danilov, which has been rejected by numerous other district courts."); Khan v. Chertoff, 2006 WL 2009055, at *2 (D. Az. July 14, 2006) (same); Khelifa, 433 F. Supp.2d at 840-42 (same); Meyersiek v. U.S. Citizenship & Immigration Services, 2006 WL 1582397, at *3 (D.R.I. June 6, 2006) (same); Daami, 2006 WL 1457862, at **3-6 (same); al-Kudsi v. Gonzales, 2006 WL 752556, at *2 (D. Or. March 22, 2006) (same); with El Kassemi v. Dept. of Homeland Security, 2006 WL 2938819, at *2  (D.N.J. Oct. 13, 2006) (dismissing petition for naturalization for lack of subject matter jurisdiction and finding "persuasive" the reasoning in Danilov); Damra v. Chertoff, 2006 WL 1786246, at **3 (N.D. Ohio June 23, 2006) ("While the court recognizes that a permanent resident is entitled to a decision made pursuant to his or her naturalization application within a reasonable amount of time, the language of 8 U.S.C. § 1447(b) does not give this court subject matter jurisdiction to act upon Damra's petition until 120 days after the completion of the examination, and the examination cannot be deemed complete until the FBI has concluded to its own satisfaction that Damra is without a disqualifying criminal history.").

Defendants' request that this Court remand the matter to USCIS also was substantially justified.  As Judge Rosen analyzed in his exhaustive decision in Khelifa, "[w]hile the weight of authority is against Defendants' position as to subject matter jurisdiction, this same line of cases uniformly supports Defendants' contention that CIS generally should be given the opportunity to decide applications for naturalization in the first instance." 433 F. Supp.2d at 842.  Thus, even those courts that have determined that they have subject matter jurisdiction to adjudicate an application for naturalization have remanded the matter to USCIS for determination in the first instance.  See

Said, 2006 WL 2711765, at *3 (remand to USCIS to complete name check by October 18, 2006);

Khan, 2006 WL 2009055, at *2 (remand to USCIS to complete adjudication within 120 days);

Khelifa, 433 F. Supp.2d at 842-45 (remand to USCIS to for prompt determination); Daami, 2006 WL

1457862, at *6 (remand to USCIS with instructions that it promptly adjudicate plaintiff's application

upon receipt of the completed background check from the FBI).  Thus, for example, in El-Daour, the

district court reasoned that:

> [W]hile I am confident that I have subject matter jurisdiction over
> El-Daour's application, I must remand the action to the CIS.  Section
> 1447(b) permits a court to "remand the matter, with appropriate
> instructions, to the Service to determine the matter."  Certainly, I
> sympathize with El-Daour's plight. He "is understandably anxious to
> complete the naturalization process so he can fully enjoy the benefits
> of United States citizenship." Yet the very reason that the CIS did not
> process El-Daour's application within 120 days of his examination
> prevents me from deciding his application.  The FBI has not yet
> completed the criminal background check. This is a vital piece of
> information.   A court is not equipped to conduct such an
> investigation.  I do not have the resources at my disposal to determine
> whether El-Daour presents a risk to national security or to public
> safety.

417 F. Supp.2d at 683-84.  The district court in El-Daour therefore "remand[ed] the action to the CIS

for a prompt resolution once the background check has been completed the action to the CIS."  Id.

at 684.

In sum, in view of the unsettled nature of the law regarding the question of this Court's

subject matter jurisdiction, and the uniform action by other courts in remanding like cases to USCIS,

the government was substantially justified in filing a motion to dismiss or, in the alternative, to

remand to USCIS.  All hours between requested by plaintiff between May 9, 2005 and October 8,

2005, a total of 19 hours, should be disallowed.

2.     **Opposition to Naturalization**

As this Court noted in its decision of May 9, 2006, defendants opposed plaintiff's naturalization during the hearing of January 20, 2006, on the ground that he lacked good moral character, pointing to the following facts: (1) that plaintiff was accused of assault and battery in 1995 by his then-wife, and served a year of administrative probation; (2) that plaintiff had had a 30-day temporary restraining order entered against him by his then-girlfriend in 1995; (3) that plaintiff had been accused of embezzlement by PCD, his former employer, and had been questioned by the FBI and the Peabody Police Department in connection with that allegation; and (4) that plaintiff's passport did not reflect his true name.  At the conclusion of the hearing, the government also informed the court that there might be classified information that might bear on plaintiff's application, and requested leave to file an ex parte, in camera submission.

In its decision of May 9, 2006, this Court rejected each of the grounds proffered by defendants and, in so doing, credited plaintiff's testimony during the hearing.  Here again, however, that this Court rejected the arguments advanced by the defendants is not dispositive of the question whether the government's position was substantially justified.  See Schock, 254 F.3d at 6; Minor, 797 F.2d at 739.  That plaintiff was accused of assault and battery in by his then-wife in 1995, and served a year of administrative probation, is itself a ground upon which defendants could oppose a finding of good moral character.  Cf. Grageda v. U.S. Immigration & Naturalization Service, 12 F.3d 919 (9th Cir. 1993) (spousal abuse under Cal. Penal Code § 273.5(a) constitutes crime of "moral turpitude" under 8 U.S.C. § 1251(a)(4).  Indeed, plaintiff admitted in his testimony during the hearing that he had pushed his then-wife so that she fell backwards onto a couch.  As this Court noted during the hearing, that action constitutes assault and battery.

- 10 -

Plaintiff emphasizes that none of these acts occurred within the five-year statutory period. See Pl. Mem. at 2-4. However, events outside the five-year statutory period may be relevant to determining an applicant's moral character during the statutory period. The relevant statute provides:

> In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

8 U.S.C. § 316(e); see also 8 C.F.R. § 316.10(a)(2).

Finally, while defendants sought leave to file classified materials under seal for ex parte and in camera review and also requested a remand for a further interview of the plaintiff, neither action militates in favor of a finding that the government's position was not substantially justified. As to the former, as was explained during the hearing on January 20, 2006, and in the government's motion to leave, the material in question would only be offered in support of a request for a remand, and the government expressly noted in its motion for leave that it was "currently conducting a full file review of information recently received from the [FBI] to ensure that the material in question is classified." Motion for Leave to File Materials Under Seal For Ex Parte and In Camera Review at 1 n.1. After conducting a full file review of information received from the FBI, defendants concluded that there was no classified information that bore on plaintiff's application for naturalization, and withdrew the motion. There was nothing improper in that action.

Nor was the government's request for a remand for a further interview improper. As set forth above, the majority of courts that have entertained actions brought pursuant to § 1447(b) have

remanded the matter to USCIS for adjudication, including in cases in which all background checks have been completed.  As Judge Rosen explained in <u>Khelifa</u>:

> Thus, while Plaintiff's background check is now complete, the Court still sees considerable benefit in allowing CIS to make the first assessment as to whether any information disclosed in this investigation has any bearing upon Plaintiff's eligibility for citizenship.  First and foremost, CIS has the experience and expertise in making this assessment--and, more generally, in determining whether an applicant meets all of the various criteria for naturalization--while the Court has neither.  Next, any subsequent judicial review--a function that does lie within the Court's experience and expertise--would be considerably aided by an agency analysis and explanation as to why it acted as it did on Plaintiff's application. Finally, as a practical matter, now that all barriers to a determination seemingly have been removed, CIS is just as likely as this Court to promptly decide Plaintiff's application--and, indeed, Defendants have stated their willingness and ability to make a decision within 90 to 120 days if so ordered by the Court.

433 F. Supp.2d at 844.  Here, the government in seeking a limited remand, the government expressly noted that this Court would retain jurisdiction to decide the pending naturalization case, and that a limited remand so that USCIS could conduct a further interview would provide the Court with a more complete record upon which to determine plaintiff's eligibility for naturalization.  Given that other courts have remanded like cases to USCIS for adjudication in the first instance, the government's request was substantially justified.

## II.    PLAINTIFF IS NOT ENTITLED TO A HIGHER FEE

Even if this Court were to enter an award attorney's fees and costs in plaintiff's favor, he is not entitled to a fee that exceeds the statutory cap (with the exception of the cost-of-living adjustment).

The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee * * *." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff contends that the limited availability of qualified attorneys for the proceedings involved justifies a fee higher than the statutory cap of $125 an hour, and includes a supporting declaration that plaintiff could not find an attorney in the Greater Boston area to prosecute his case for $125 an hour. See Pl. Mem. at 6-8.

Even a cursory review of the docket of this district belies this claim. This Court's docket is flooded with naturalization and adjustment of status cases, and those cases have been brought by a multitude of different attorneys. Indeed, undersigned counsel alone has litigated naturalization and/or adjustment of status cases before this Court that have been brought by ten different attorneys, not counting Mr. Johnson:

- Santana v. Riordan, No. 06-10658 RWZ (Lazar Lowinger, Esq.)

- Rodrigues v. Chertoff, No. 06-10083 RWZ (Susan E. Zak, Esq.)

- Suleiman v. Ashcroft, No. 04-12373 RWZ (Jeffrey W. Goldman, Esq.)

- Muntasser v. Ridge, No. 04-11259 RWZ (Jeremiah Friedman, Esq.)

- Bespalko v. Gonzales, No. 06-10599 GAO (Pavel Bespalko, Esq.)

- Lisovets v. U.S. Citizenship & Immigration Services, No. 06-10824 EFH (Michael D. Greenberg, Esq.)

- Li v. Chertoff, No. 06-10963 JLT (Desmond P. FitzGerald, Esq.)

- Liao v. Riordan, No. 06-11052 JLT, and Abdollahzadeh v. Riordan, No. 05-40067 FDS (Richard M. Green, Esq.)

- Lynch v. Riordan, No. 06-11794 MLW (Maureen S. O'Sullivan, Esq.)

• Helio Conde v. Gonzales, No. 05-12007 RCL (Anthony Drago, Esq.)

Plaintiff's assertion that there is a limited availability of qualified attorneys for the proceedings involved, therefore, lacks merit.

Nor can plaintiff show that his counsel has a specialized skill that would warrant a higher fee. As the Supreme Court explained in Pierce v. Underwood:

> "[T]he special factor" formulation suggests Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be. If that is to be so, the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question--as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

487 U.S. at 572. In this case, although the parties were in disagreement as to whether plaintiff should be naturalized, plaintiff's counsel was faced with a fairly straightforward application of the standards regarding naturalization to the facts of plaintiff's particular case. Cf. Johnson v. Gonzales, 416 F.3d 205, 213-14 (3d Cir. 2005) (counsel not entitled to higher fee in asylum case because, "[a]lthough Johnson's counsel is an experienced attorney who specializes in immigration, he was here faced with a case of straightforward application of the substantial evidence and asylum standards.").

## CONCLUSION

For the foregoing reasons, plaintiff's Application for Allowance of Attorney's Fees and Costs should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Mark T. Quinlivan
MARK T. QUINLIVAN
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3606

Dated: October 27, 2006