THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NABIL SHALAN,        )<br>      Plaintiff        )<br>                              )<br>V.                              )<br>                              )  CIVIL ACTION NO.05-10980-RWZ<br>MICHAEL CHERTOFF, as Secretary of the        )<br>Department Homeland Security; EDUARDO        )<br>AGUIRRE, as Director of the U.S. Citizenship &        )<br>Immigration Services; DENIS C. RIORDAN,        )<br>District Director of the U.S. Citizenship &        )<br>Immigration Services for Boston, Massachusetts        )<br>      Defendants        ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSITION TO ALLOWANCE OF ATTORNEY'S FEES AND COSTS**

**A.     Defendants' objection to the award of attorney's fees and costs should be denied in full.**

Defendants argue their pre-litigation position was substantially justified. They claimed they could not arrive at a decision on Plaintiff's application for naturalization until they completed all background checks. They then claimed that, as of the time Plaintiff commenced litigation, they had not completed Plaintiff's national security check. Memorandum of Law in Opposition to Application for Allowance of Attorney's Fees and Costs (hereinafter 'Defendants Opposition to Fees', Doc. 29, pp. 3-5  In making this assertion, Defendants do not get to the heart of the matter---their inaction, delay, mismanagement and illegal conduct.

First, Defendants sat on Plaintiffs' application for three years without taking any action on the national security check[1]. Plaintiff Shalan filed his application for naturalization May 4,

---

[1] Defendants never have talked about the elephant in the room. The Court itself noted that 'defendants offer no reason specific to plaintiff for the extensive time expended in completing review of his application.' Memorandum of Decision, Doc. 12, p. 3.

2001. Memorandum of Decision, Doc. 12, p. 1  Defendants processed Plaintiff for national security checks June 30, 2004.  Declaration of Karen Haydon (hereinafter 'Haydon Declaration', Doc. 9, Ex. 1, ¶ 6.  Defendants have offered no explanation whatsoever for the three year delay and inaction.

      Second, had Defendants initiated the national security check within a matter of a few weeks or months after Plaintiff filed his application for naturalization, they would have had it completed before they examined Plaintiff on November 3, 2004.  Defendants initiated the process on June 30, 2004 and completed it to their satisfaction by April 4, 2006 when the United States Attorney withdrew Defendants' Motion to provide the Court with classified information, a period of less than two years. Withdrawal of Motion, Doc. 19.  [Incidentally, Defendants have not explained why a national security check would take two years.  In her Declaration, Karen Haydon states that a national security check  "is run against databases containing the information that is not necessarily revealed by the FBI's fingerprint check." Haydon Declaration,  Doc. 9, Ex. 1, ¶ 4   Without more detail, it does not seem that checking databases would be a two year activity.]    It is obvious that proper management of Plaintiff's file would have secured the national security check long in advance of November 3, 2004.

      Third, Defendants violated the law in scheduling  Plaintiff's examination for November 3, 2004.  Before the scheduling of the examination,  Defendants were required to possess  a definitive response from the Federal Bureau of Investigation that a full criminal background check of the Plaintiff had been completed. 8 C.F.R. § 335.2(b)  If Defendants did not have the response prior to November 3, 2004, they had no business scheduling the examination.  Karen Haydon's Declaration is unenlightening on the issue of the FBI response.  She distinguishes the

national security check from a Federal Bureau of Investigation fingerprint check for relevant criminal history records of the alien; she states that the Boston Office had not completed the national security check as of September 21, 2005; she is silent as to whether the Boston office had the definitive response from the FBI on Plaintiff's criminal record history prior to its scheduling its examination of Plaintiff. Haydon Declaration, Doc. 9, Ex. 1. Be that as it may, by citing as authority for their motion to dismiss the 1997 legislation that prevents USCIS from using any appropriated funds for naturalization until it 'has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed', Defendants have implicitly represented to this Court that they did not have the definitive response of the FBI prior to their scheduling of Plaintiff's examination as required by 8 C.F.R. § 335.2(b) nor did they have it by the time they filed their motion to dismiss. See Memorandum in Support of Defendants' Motion to Dismiss or, In the Alternative, to Remand, Doc. 9, p. 5; See also Defendants' Opposition to Fees, Doc. 29, p. 3-4.

    Fourth, Defendants violated the law in failing to make a decision on the application within 120 days of the examination. 8 C.F.R. § 335.3 required the Examiner to make a decision at the time of the examination or within 120 days thereafter. By law, Plaintiff was entitled to a decision on his application no later than March 3, 2005.

    Fifth, Defendants did nothing to move along Plaintiff's application after the examination. On November 3, 2004, when one of Defendants' Service Officers conducted Plaintiff's naturalization examination, he or she would have reviewed the file and determined that it was not ripe for adjudication, either because it did not contain the definitive response of the FBI regarding Plaintiff's criminal record history or else because the national security check was not

complete. During the ensuing 120 days, the Service Officer and other employees of Defendants could have acted in an attempt to meet their legal obligation of adjudicating Plaintiff's application within that period. There is no evidence in this case that Defendants took any steps between the time of the examination and the filing of this lawsuit to secure the FBI report or the national security check.

In their response to Plaintiff's Application for Attorney's Fees and Costs, Defendants offer legal authority that would support a motion to dismiss or to remand on the basis of an incomplete background investigation. They claim that such authority substantially justified their litigation efforts in seeking a dismissal or remand. Defendants' Opposition to Fees, Doc. 29, pp 6-11.

Defendants would have had no basis for their Motion to Dismiss or Remand if they had not sat on Plaintiff's case for three years before they initiated the national security check or if they had not scheduled Plaintiff for his examination until they had secured all background reports. It was Defendants' pre-litigation delay, inaction, mismanagement and illegal conduct that compelled Plaintiff to go to Court. Defendants certainly cannot use their own pre-litigation misconduct as substantial justification for their litigation position.[2]

---

[2]Defendants ask the Court to disallow 19 hours of time spent by the Plaintiff's attorney in addressing Defendants' motion to dismiss or remand because there was substantial justification for the motion. Defendants' Opposition to Fees, Doc. 29, p. 9. But for Defendants' delay, inaction, mismanagement, and illegal conduct, the motion itself could not have been interposed and entertained. Thus, a disallowance of the 19 hours is inappropriate. Moreover, a disallowance of a portion of an attorney's time should be granted only 'to reflect the plaintiffs' less than complete success and the extent to which their legal work was aimed at contesting the government's reasonable position.' McDonald v. Secretary of Health and Human Services, 884 F. 2d 1468, 1480 (1st Cir., 1989) Plaintiff enjoyed complete success in his case, including success in resisting Defendants' Motion to Dismiss or Remand. Thus, even if Defendants could substantially justify the Motion, Plaintiff's time in resisting should not be disallowed as Plaintiff was successful in his case at every turn and on every issue.

In the end, because Defendants' inaction and delay was unreasonable and because their mismanagement and illegal conduct was without justification, Plaintiff had to bring a lawsuit to get his four year old application for naturalization decided.  For that, fees and costs are to be assessed under the Equal Access to Justice Act.

"(W)e agree with the district court that 'the remedial purpose of the EAJA is best served by awarding fees against the government for all phases of litigation made necessary by its unreasonable actions' McDonald, 693 F. Supp. at 1306 n. 4.  See also Trichilo v Secretary of Health and Human Services, 823 F. 2d 702, 707 (2nd Cir. 1987)('Since the purpose of the EAJA is to remove counsel fees as an impediment to challenging unreasonable and unjustified governmental actions, where a governmental action has been shown to have been unjustified, there should be as little disincentive for plaintiffs to obtain attorney's fees as there is for them to challenge the action itself').  This viewpoint is further supported by the 1985 amendment to EAJA, which made clear that 'the government's position' under EAJA refers to the underlying agency actions as well as to the government's litigating position."   McDonald v. Secretary of Health and Human Services, 884 F. 2d 1468, 1481 (1st Cir. 1989)

Defendants need to provide substantial justification for **both** their pre-litigation position and their litigation position to avoid an assessment of attorney fees and costs under EAJA. United States of America v. One Parcel of Real Property 960 F. 2d 200, 208 (1st Cir. 1992) Because Defendants cannot show by a preponderance of evidence that their pre-litigation position of delay, inaction, mismanagement, and illegal conduct was substantially justified,

EAJA fees are to be awarded.  <u>Salem v USA</u>, <u>Immigration and Naturalization Service</u>, 122 F. Supp. 2d 980, 983-4 (C.D. C. Ill, 2000) makes this point explicit:

> "In determining whether the Government's position is substantially justified, a district court should consider the Government's pre-litigation conduct, i.e., the actions or inactions giving rise to the instant litigation, as well as the Government's conduct relative to the instant litigation.  (cites omitted) 'EAJA fees may be awarded if either the government's prelitigation conduct or its litigation position are not substantially justified. However, the district court is to make only one determination for the entire civil action.' (cite omitted) Therefore, attorney's fees may be awarded under the Equal Access to Justice Act where the Government's prelitigation conduct was not substantially justified despite a substantially justified litigation position....
> 
> "In the instant case, the Court cannot say that Defendants' actions were substantially justified.  First (and most important) prior to the instant litigation, Defendants took an inordinate amount of time in processing Salem's petition for naturalization....Defendants have offered no explanation as to why, if their position is correct that Salem's February 7, 2000, interview constituted INS's final determination regarding his eligibility for naturalization, it took nearly four years for Salem's application for naturalization to be processed...
> 
> "(A)warding attorney's fees under the Equal Access to Justice Act to Salem would foster public policy in that 'the potential for recovering the expenses  a private party puts forward to oppose the government encourages members of the public to assist in the

'valuable public service [of] improving the efficiency of government operations.' (cite omitted)..."

The foregoing makes clear that Defendants' objection to the award of attorney's fees and costs should be denied in full.

    **B.    The appropriate hourly fee for the services of Plaintiff's attorney is $250.00 per hour.**

Defendants object to an attorney's fee award at the rate of $250.00 per hour[3]. They assert that a straightforward delayed naturalization case does not require the services of a specialized lawyer. Defendants' Opposition to Fees, Doc. 29, p. 14. They also claim that there is not a limited availability of qualified lawyers, and they support this assertion with a list of ten delayed naturalization or adjustment of status cases involving lawyers other than the Plaintiff's lawyer. Doc. 29, p. 13-14

Defendants' list of cases and lawyers is revealing. Lazar Lowinger, Susan Zak, Jeffrey Goldman, Jeremiah Friedman, Michael Greenberg, Desmond FitzGerald, Richard Green, Maureen O'Sullivan and Anthony Drago are members of the American Immigration Lawyers Association, a national organization dedicated to advance the science of the administration of law pertaining to immigration, nationality and naturalization. Attached as Exhibit 1 the Affidavit of Vard R. Johnson regarding the listing.. While membership in the American Immigration Lawyers Association does not confer specialist status on the member, it strongly suggests that the member has acquired or is acquiring unique skills as an immigration practitioner.

---

[3] Defendants do not object, however, to the cost of living adjustment. Defendants' Opposition to Fees, Doc. 29, p. 12

Nine out of ten plaintiffs chose members of the American Immigration Lawyers Association to represent them before the United States District Court in Massachusetts on cases claimed by the Defendants to be similar to that of the Plaintiff.[4]  These plaintiffs obviously thought their cases warranted representation by lawyers who were skilled or purported to be skilled in immigration law.  Their beliefs are consistent with the statement of attorney Anthony Drago that a delayed naturalization case requires the services of an attorney who is skilled in immigration law. Affidavit of Anthony Drago, Doc. 26, Ex. 5, § 4.

Attorney Drago also states that the prevailing market rate in the Greater Boston area for the kind and quality of services provided Plaintiff Shalan by his attorney in this case is at least $300.00 per hour.  He states that, as a practical matter, Plaintiff Shalan would not have found an attorney in the Greater Boston market who would provide the kind and quality of services necessary for the prosecution of his case for $125.00 per hour or for $173.29 per hour, which reflects the cost of living adjustment.  Affidavit of Anthony Drago, Doc. 26, Ex. 5, § 7.

Plaintiff asks the Court to approve Plaintiff's Application for Allowance of Fees and Costs as submitted on September 29, 2006.   Plaintiff also asks the Court to include in its allowance the time that Plaintiff's lawyer has spent since September 29, 2006 in responding to the Government's objection to the fee application.  Attached as Exhibit 1 is the Affidavit of Vard R. Johnson regarding the additional time.

Dated this 6th day of November 2006.

---

[4] Pavel Bespalko is the only attorney in Defendants' list who is not a member of the American Immigration Lawyers Association.  Since the Plaintiff in Bespalko v Gonzales shares attorney Bespalko's surname, one suspects that Plaintiff Bespalko's judgment as to her choice of lawyer was effected by a family relationship.  If that be the situation,  Plaintiff Bespalko's anomalous deviation from the use of an AILA member as her lawyer is understandable.

Nabil Shalan, Plaintiff,

/s/ Vard R. Johnson
Vard R. Johnson, BBO # 660137
Suite 210, 18 Tremont Sreet
Boston, Massachusetts 02108
1-617-557-1711
1-617-557-4711
vardinboston@verizon.net
Plaintiff's Attorney

## CERTIFICATE OF SERVICE

I, Vard R. Johnson, certify that I served the foregoing Response to the Defendants' Memorandum of Law in Opposition to Application for Allowance of Attorney's Fees and Costs, including Exhibit 1, upon Mr. Michael Sady, Mr. Mark Quinlivan, and Mr. Mark Grady, Assistant United State Attorneys, John Joseph Moakley U.S. Courthouse, `1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210 by electronic filing, effected November 6, 2006.

/s/ Vard R. Johnson
Vard R. Johnson

THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NABIL SHALAN, ) | |
|     Plaintiff ) | |
| ) | |
| V. ) | |
| ) | CIVIL ACTION NO.05-10980-RWZ |
| MICHAEL CHERTOFF, as Secretary of the ) | |
| Department Homeland Security; EDUARDO ) | |
| AGUIRRE, as Director of the U.S. Citizenship & ) | AFFIDAVIT OF VARD R. JOHNSON |
| Immigration Services; DENIS C. RIORDAN, ) | |
| District Director of the U.S. Citizenship & ) | |
| Immigration Services for Boston, Massachusetts ) | |
|     Defendants ) | |

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS ) | |
| ) SS | |
| COUNTY OF SUFFOLK ) | |

Before me a Notary Public came Vard R. Johnson who, after being placed on oath stated:

1. I am the attorney for the Plaintiff in this action.

2. I spent the following time in representing the Plaintiff subsequent to September 29, 2006:

| | | |
|---|---|---|
| 10/12/2006 | Telephone conversation with Mark Quinlivan regarding the fee application; agreed to an extension of time for Defendants' response. | .25 |
| 10/27/2006 | Telephone conversation with Mark Quinlivan regarding the nature of Defendants' objection to the fee application. | .25 |
| 10/30/2006 | Review Defendants' objection to the fee application; review relevant case law. | 1.5 |
| 11/05/2006 | Draft, edit and revise Plaintiff's Response to Defendants' objection to the fee application. | 5.0 |
| 11/06/2006 | Prepare Supplemental Affidavit regarding time; effect online filing of Plaintiff's Response to Defendants' Objection to the fee application. | 1.75 |
| | Total time for work from September 29, 2006 through November 6, 2006 | 8.75 hours |

3. I am a member of the American Immigration Lawyers Association. I reviewed the current directory of the American Immigration Lawyers Association for the names of members from Massachusetts. Included in the current directory are the names of Lazar Lowinger, Susan Zak, Jeffrey Goldman, Jeremiah Friedman, Michael Greenberg, Desmond FitzGerald, Richard Green, Maureen O'Sullivan and Anthony Drago. Pavel Bespalko is not listed.

Further Affiant sayeth not.

Dated this 6th day of November 2006.

/s/ Vard R. Johnson
_____
Vard R. Johnson

Subscribed and sworn to before me this 6th day of November 2006.

/s/ Desmond P. FitzGerald
_____
Notary Public