UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10980-RWZ


NABIL SHALAN

v.

MICHAEL CHERTOFF, et al.


MEMORANDUM OF DECISION

November 14, 2006

ZOBEL, D.J.

Five years ago, plaintiff Nabil Shalan ("Shalan") filed an application for

citizenship. After years of waiting for a determination on his application, he filed suit

against defendants Michael Chertoff, Secretary of the Department of Homeland

Security, Eduardo Aguirre, Director of U.S. Citizenship & Immigration Services

("USCIS"), and Denis Riordan, District Director of USCIS for Boston, Massachusetts.

This court held a hearing on plaintiff's naturalization application and granted it. Shalan

was naturalized on August 23, 2006.

Plaintiff has now filed a timely motion for attorneys' fees and costs under the

Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") (Docket # 27), which is

opposed by the defendant (Docket # 29). For the following reasons, I allow the motion

and I award attorneys' fees and costs at the rates prescribed by the EAJA, adjusted by

the cost of living increase for the Boston area.

**I.    Background**

Plaintiff, a citizen of Jordan and a legal permanent resident of the United States, filed an application for naturalization with USCIS on May 4, 2001. On November 3, 2004, USCIS interviewed him in connection with his application. Six months later, USCIS having failed to act, plaintiff filed the instant suit requesting that the court exercise statutory jurisdiction over the application and hold a hearing. Defendants moved for dismissal of the suit, or, in the alternative, requested the court remand the case to USCIS for completion of its adjudication of the application. This court denied defendants' motion for dismissal or remand and held a hearing. Plaintiff adduced evidence that he met the requirements of naturalization, and defendants presented evidence intended to establish plaintiff's lack of moral character. See 8 U.S.C. § 1427(a)(3) (requiring good moral character for naturalization).

During the hearing, defendants represented to the court that they possessed classified information in support of their request for a remand to the USCIS. They requested an ex parte and in camera review of the information and, following the hearing, filed a formal motion requesting leave to submit additional information under seal. Defendants later withdrew that request. Two weeks later, they moved for leave to re-open the record so that USCIS could provide another affidavit and conduct a further interview with respect to plaintiff's application. On May 9, 2006, the court denied defendants' motion and granted plaintiff's application for naturalization.

**II.     Discussion**

      A.     <u>Entitlement to Attorneys' Fees and Costs</u>

In general a "prevailing party"[1] in a naturalization proceeding is entitled to attorneys' fees and costs under the EAJA.[2]  However, the Act does not allow for the award of costs and attorneys' fees where "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  In general, a position is "substantially justified" if it has a "reasonable basis in both law and fact."  United States v. Yoffe, 775 F.2d 447, 449 (1st Cir. 1985).  The test is three-part: (1) "did the government have a reasonable basis for the facts alleged;" (2) "did it have a reasonable basis in law for the theories advanced;" and (3) "did the facts support its theory."  Id. at 450.  The government has the burden of demonstrating by a preponderance of the evidence that its position was "substantially justified."  Id.  Here, the government cannot do so.

In determining whether the government's position was "substantially justified," courts analyze both the government's pre-litigation and litigation positions.  See Sierra Club v. Secretary of Army, 820 F.2d 513, 517 (1st Cir. 1987) (noting that the court must take into account "both the position of the federal sovereign in the underlying litigation and the governmental conduct which led to that litigation").

---

[1] That plaintiff is the "prevailing party" within the meaning of the statute is not in dispute.

[2] Section 2412(a)(1) of the Act provides, in pertinent part: "a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States . . . ."  28 U.S.C. § 2412(a)(1).  Moreover, Section 2412(b) of the Act provides, in pertinent part: "a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a) . . . ."  28 U.S.C. § 2412(b).

3

1.    The Government's Pre-litigation Position

In general, an applicant for naturalization is required to undergo both investigation and an examination.  See 8 U.S.C. § 1446(a)-(b).  First, the FBI is required to conduct a thorough background investigation of each applicant.  See 8 C.F.R. § 335.1.  After the completion of the FBI background investigation, the applicant must submit to an examination which includes an interview, and an oral and written test.  See 8 C.F.R. § 335.2.

If, however, the government fails to make a determination on the application "before the end of the 120 day period after the date on which the examination is conducted . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter."  8 U.S.C. §1447(b).

Here, plaintiff filed his application for naturalization on May 4, 2001.  Defendants did not examine plaintiff until November 3, 2004 — more than three years later.  Accordingly, plaintiff contends that the defendants' pre-litigation position was not "substantially justified" because it was characterized by "delay and inaction."  Defendants justify the delay because it was occasioned not by its inaction, but that of the FBI and its failure to complete the necessary background check.  Defendants have submitted the declaration of an Assistant District Director of the Boston office of USCIS, Karen Haydon, stating that the FBI initiated its background check on July 30, 2004, and that it remained pending at the time plaintiff filed suit  (See Decl. of Karen Haydon at ¶ 6 (Docket # 9-2)).  Accordingly, defendants argue, USCIS was prevented from acting

4

on plaintiff's application.[3]  The argument is without merit.  It does not matter whether

blame for the delay is properly ascribed to the FBI or USCIS; rather the delay renders

the government's position not "substantially justified."  Moreover, if the legislation

indeed has the effect defendants contend, USCIS would have been prevented from

examining plaintiff on November 3, 2004 — prior to completion of the FBI background

check.

Courts have held that undue delay in processing a naturalization application

renders the government's pre-litigation position not "substantially justified."  See, e.g.,

Salem v. INS, 122 F. Supp. 2d 980, 985 (C.D. Ill. 2000) (awarding attorneys' fees and

costs under the EAJA where court concluded government's delay of four years was not

"substantially justified"); Jeffrey v. INS, 710 F. Supp. 486, 488 (S.D.N.Y. 1989)

(awarding fees where court concluded that delay of sixteen months was not

"substantially justified").

2.    The Government's Litigation Position

----

[3] Defendants argue that under the Department of Justice Appropriations Act of
1998, USCIS is bereft of funding to process a case until the FBI has completed its
background check.  The Act provides, in pertinent part:

> none of the funds appropriated or otherwise made available to the Immigration
> and Naturalization Service shall be used to complete adjudication of an
> application for naturalization unless the Immigration and Naturalization Service
> has received confirmation from the Federal Bureau of Investigation that a full
> criminal background check has been completed, except for those exempted by
> regulation as of January 1, 1997.

Pub. L. No. 105-119, Title I, 111 Stat. 2448-2449 (Nov. 26, 1997) (codified as 8 U.S.C.
§ 1446 (Historical and Statutory Notes (Criminal Background Checks))).

a.    Government's Motion to Dismiss

Plaintiff filed the instant suit requesting that the court exercise statutory jurisdiction over the application and hold a hearing (Docket # 1).  Defendants moved to dismiss the suit, or, in the alternative, requested the court remand the case to USCIS for completion of its adjudication of the application (Docket # 9).  This court denied defendants' motion to dismiss (Docket # 12).

Plaintiff argued that, under the plain language of the statute, the court had jurisdiction over the case because the government failed to act upon his naturalization application within the 120 days of the examination provided for by 8 U.S.C. § 1447(b).  Defendants countered that the statutorily required "examination" of plaintiff had not yet been completed because the FBI background check was still pending, and thus the 120-day time period was not triggered until all investigations were completed.

This court rejected defendants' arguments as contradicted by the plain language of the statute and accompanying regulations.  Specifically, the court concluded that the regulation requires completion of the FBI background investigation before the examination may even be started.  See 8 C.F.R. § 335.2(b) (emphasis added).  Accordingly, the court concluded that the 120-day period was triggered by the date of examination and thus it had jurisdiction under §1447(b).  I find the government's position with respect to this court's jurisdiction not "substantially justified."

b.    Naturalization Hearing and Post-Hearing Motions

After denying defendants' motion to dismiss, the court held a hearing on plaintiff's naturalization application.  Defendants presented evidence at the hearing

6

intended to demonstrate that plaintiff lacked good moral character.  Specifically, defendants contended that plaintiff lacked good moral character because: (1) he failed to classify a prior assault and battery charge as a conviction on his application; (2) there was a 30-day civil temporary restraining order issued against him arising out of a dispute with a former girlfriend; (3) he was employed as a network administrator by a company and was interviewed regarding potential embezzlement reported by the company; and (4) his passport at the time he first arrived in the United States did not reflect his full name.

In addition, at the conclusion of the hearing, the defendants moved the court for an ex parte and in camera review contending that they were in possession of classified information which was relevant to the adjudication of plaintiff's naturalization application.  Following the hearing, defendants filed a formal motion for leave to provide ex parte information under seal (Docket #17), which "in its view, would warrant further investigation of [plaintiff]."  (Defs' Mem. for Leave to File Under Seal at 4).  Two months later, they withdrew their motion, contending that, "[a]fter completing a full file review of information received from the Federal Bureau of Investigation," defendants concluded that "there was no classified information that b[ore] on plaintiff's application for naturalization" (Docket # 19).  Defendants then moved the court for leave to allow USCIS to interview the plaintiff or to have placed in the record the affidavit of a USCIS officer (Docket # 20).

The evidence adduced by defendants regarding plaintiff's moral character was unpersuasive.  Moreover, none of the evidence comported with the statutorily-

7

prescribed actions that qualify as proof of lack of "good moral character."  See 8 U.S.C. 8 U.S.C. § 1101(f) (naming eight categories of disqualifying behavior, such as, inter alia, being a "habitual drunkard"; deriving income "principally from illegal gambling" and having been convicted of an aggravated felony).  Finally, defendants offered no explanation as to why review of any relevant materials provided by the FBI could not have been conducted prior to the naturalization hearing.

Accordingly, I find that the defendants' pre-litigation and litigation positions with respect to plaintiff's naturalization application were not "substantially justified." Moreover, there are no "special circumstances [which] make the award of attorneys' fees unjust."  28 U.S.C. § 2412(d)(1)(A).  Plaintiff is therefore entitled to attorneys' fees and costs under the EAJA.  The only remaining question is the amount of such fees and costs.

2.     Amount of Attorneys' Fees and Costs

Plaintiff requests $18,250.00 in attorneys' fees and $331.00 in costs,[4] an amount that exceeds the statutory maximum.  He contends the limited availability of qualified attorneys for proceeding like this justifies a higher attorneys' fee ($250 per hour) than provided for by statute ($125 per hour).  The government objects to any fees in excess of the EAJA statutory cap.

---

[4] This amount represents 57.75 hours expended by attorney Vard R. Johnson in representing plaintiff from inception of the litigation through naturalization at $250 per hour ($14,437.50).  In addition, this represents 15.25 hours expended in preparation of the instant fee application at $250 per hour ($3,812.50).  Plaintiffs' costs of $331.00 represents the $250.00 filing fee, the $45.00 witness fee (Karen Hayden) and the $36.00 service of process fee.

8

The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).  The Supreme Court explained in Pierce v. Underwood, 487 U.S. 552, 572 (1988) that "special factors" "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation."

Plaintiff's counsel unquestionably represented his client in a professional and knowledgeable manner, and it may well be that he is one of only a few skilled practitioners in this area of the law.  But courts have not "awarded enhanced hourly rates in immigration cases pursuant to the statutory exception for limited availability of qualified attorneys where the litigation in question required no distinctive knowledge or specialized skill."  Thangaraja v. Gonzales, 428 F.3d 870, 876 (9th Cir. 2005).  Like the court in Thangaraja, this court declines to adopt a per se rule that the practice of immigration law is a special factor warranting an enhancement of the statutory rate.  Id. Rather, because plaintiff has not alleged or established that his counsel required some "distinctive knowledge" or "specialized skill" to litigate this plaintiff's case, the court declines to award enhanced fees.  Id.; but see Harriott v. Ashcroft, 277 F. Supp. 2d 538, 546-47 (2003) (holding that "[t]he Court is satisfied that Petitioners' counsel's specialized knowledge of immigration law, and the limited availability of attorneys who would have taken this case at the statutory rate, are 'special factors' which justify [a

reasonable] increase in the rate of pay") (internal citations omitted).

Finally, plaintiff has offered no evidentiary support for the assertion that there were "no attorneys" skilled in immigration law willing to work for $125 per hour.  See Johnson v. Gonzales, 416 F.3d 205, 213 (3d Cir. 2005) (petitioner successfully appealed the BIA's denial of his asylum claim and then sought attorneys' fees and costs under the EAJA; court of appeals declined to "pierce the statutory ceiling" and award enhanced fees where there was no evidence that specialized skill was needed or that "there were a limited number of attorneys who would take on the case at the statutory rate.").

In the alternative, plaintiff requests that the statutory rate be increased by a cost of living adjustment.  Cost of living adjustments are calculated by "multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ("CPI-U") for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date of EAJA's $125 statutory rate."  Thangaraja, 428 F.3d at 876 (granting cost of living increase but finding that no special factors justified additional increase).  I allow this reasonable request.[5]

_____

[5] The cost of living adjustment is computed as follows: In March 1996, the CPI-U for the Boston area was $162.8.  (See Aff. of Vard R. Johnson, Ex. A (Docket # 26-2)). In 2005, the average annual CPI-U for the Boston area was $216.4.  To date in 2006, the average annual CPI-U for the Boston area is $225.1 (representing the July 2006 high).  For the year 2005, multiplying the statutory rate ($125) by  the annual average CPI-U for the year in which counsel's work was performed ($216.4 in 2005) and dividing by the CPI-U figure for the Boston area in March 1996 ($162.8) equals $166.15.  Similarly, for the year 2006, multiplying the statutory rate ($125) by the annual average CPI-U for 2006 ($225.1 in 2006) and dividing by the CPI-U figure for the Boston area in March 1996 ($162.8) equals $172.83.

**III.    Conclusion**

Plaintiff is entitled to attorneys' fees and costs as the "prevailing party" in the litigation under the EAJA and his motion for such fees is allowed (Docket # 27). Accordingly, he is hereby awarded $12,489.67 in attorneys' fees and $331.00 in costs pursuant to the statutory rate prescribed by the EAJA, adjusted by the cost of living

increase for the Boston area.[6]


_November 14, 2006_         _____/s/Rya W. Zobel_____
DATE                           RYA W. ZOBEL
                    UNITED STATES DISTRICT JUDGE

---

[6] This amount represents 19 hours expended by attorney Vard R. Johnson in representing plaintiff in 2005 at the statutory rate of $166.15 per hour (for a total of $3,156.85) and 38.75 hours expended in 2006 representing plaintiff at the statutory rate of $172.83 per hour (for a total of $6,697.16).  In addition, this represents 15.25 hours expended in preparation of the instant fee application at the statutory rate of $172.83 per hour ($2,635.66).  Plaintiffs' costs of $331.00 represents the $250.00 filing fee, the $45.00 witness fee (Karen Haydon) and the $36.00 service of process fee.  I note that reasonableness of the attorneys' fees and costs submitted is uncontested by defendants.